# Fisher *v.* King, Appellant.

*Practice, C. P.—Opening judgment—Petition and answer.*

A proceeding instituted to open a judgment for matters outside the record should be permitted, only after a plain issue has been made up by petition, verified by affidavit, with answer responsive thereto. The testimony should then be limited to the issue thus made up.

*Duty of lower court to state reasons for decree.*

In proceedings to open a judgment the court below should state the reasons for the decree. The proceedings are purely equitable, and findings of fact and inferences therefrom are just as essential to a fair review as those of a master in chancery.

*Evidence—Discretion of court to discredit.*

Where on a rule to open judgment defendant swears that he did not know that the note on which judgment was entered was a judgment note, but his testimony is discredited by the direct denial of plaintiff, and by three other witnesses, the court will be justified not only in not believing him on this matter, but also in refusing to believe him as to other defences.

*Alteration of written instrument—Adding name—Public policy.*

It is a material alteration in a written instrument to willfully cause the name of a person to be placed on the paper as a witness who was in no respect a witness to any part of the transaction. The ground of the rule is public policy to insure the protection of instruments against fraud and substitution.

An instrument, however, will not be avoided, because a person attempted to indorse a note, but through ignorance wrote his name as a witness. Such alteration is not willful, nor does it come within the reasons of the rule as against public policy.

Argued Jan. 5, 1893. Appeal, No. 435, Jan. T., 1892, by defendant, Henry King, from order of C. P. No. 3, Phila. Co., Dec. T., 1889, No. 452, refusing to open judgment in favor of Frederick Fisher. Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS, McCOLLUM, MITCHELL and DEAN, JJ.

Rule to open judgment entered on single bill.

The facts appear by the opinion of the Supreme Court.

The court discharged the rule. Defendant appealed.

*Error assigned* was, inter alia, order of court as above.

*William Henry Peace*, for appellant, cited, as to the invalidity of the note by reason of the addition of the name of a witness: Marshall v. Gougler, 10 S. & R. 164; Craighead v. McLoney, 99 Pa. 211; Neff v. Horner, 63 Pa. 330; Homer v. Wallis, 11 Mass. 312; Getty v. Shearer, 20 Pa. 12; Biery v. Haines, 5 Wh. 563; Monroe v. Monroe, 93 Pa. 520.

*Walter George Smith, George W. Shoemaker* with him, for appellee, cited Jenkintown Nat. Bank's Ap., 124 Pa. 337; Applebee's Ap., 126 Pa. 385; Earley's Ap., 90 Pa. 321; Wernet's Ap., 91 Pa. 319; Craighead v. McLoney, 99 Pa. 211; Lomison v. Faust, 145 Pa. 8; Kountz v. Kennedy, 63 Pa. 187; Barrington v. Bank, 14 S. & R. 425; Schenck's Ap., 94 Pa. 37.

OPINION BY MR. JUSTICE DEAN, February 6, 1893:

On January 18, 1890, judgment was entered in this case on a single bill, dated July 1, 1889, with warrant of attorney in

sum of seven hundred and fifty dollars ($750), payable two years after date with interest at five per cent. The obligor is Henry King, this appellant; the obligee Frederick Fisher, appellee, who assigned the judgment to Bromley & Burns as collateral security for a loan of two hundred and twenty-five dollars ($225).

On October the 24th, 1891, on motion of defendant, the court awarded a rule to show cause why the judgment should not be opened and he let into a defence. Both parties took testimony, and after hearing, on the 20th of January, 1892, the court entered this decree, " Rule discharged; " whereupon King took this appeal.

The first inquiry that suggests itself here, on review, is,— On what grounds did the court below award the rule? For neither in copy of docket entries, nor elsewhere in the paper books, is there hint of petition or affidavit by King. A search, however, through the record shows an affidavit filed by King on the 24th of October, 1891, averring want of consideration, and that the bill was delivered to Fisher solely for the purpose of enabling Fisher to raise money for his—Fisher's—use. No answer was filed by Fisher to the rule, but the parties at once proceeded to take testimony assailing and defending the judgment, which was attacked not only for the cause specified in the affidavit, but also for one altogether different.

The records of the court import verity; any attempt to impeach or set aside a judgment for matters outside the record should be permitted, only after a plain issue has been made up by petition verified by affidavit, with answer responsive thereto; then, the testimony taken should be limited to the issue. In such proceeding, the judge of the common pleas is called upon to exercise equity powers; he passes on the evidence and the law, and although a jury may intervene, the end is the same, the final decree of a court of equity. Being decrees wholly equitable, the reasons for them become important. The entries, " Rule absolute," or " Rule discharged," are, doubtless, in the mind of the court, the dictates of a sound discretion; still, in reviewing that discretion, we cannot always take for granted what does not appear, or is not a reasonable inference from what does appear. As a general proposition it is correct to say, " This court reviews judgments, not reasons," but it is

not true when applied to proceedings involving the exercise of a reviewable judicial discretion. It would accord with our inclinations to assume, from the learning and integrity of the judges of the common pleas, that these decrees are prompted always by a sound discretion, and never by the dictates of an arbitrary will; but the legislature has not so assumed, and by recent laws has imposed upon us the duty of review as in technically equitable proceedings. Therefore, the findings of fact and the inferences therefrom are just as essential to a fair review as those of a master in chancery. We recognize the the truth, that the common pleas has better opportunity for the exercise of discretion than we. Doubtless, much of the light first thrown on the dispute becomes dim when transmitted to us through paper books; witnesses are discredited, whom we, having less knowledge of the surroundings, believe; and facts are admitted or assumed, in the first hearing, which never find their way to the printer. Therefore, the reasons which move the court to the decree would aid us in passing on alleged error and sometimes save us from convicting of error, which is perhaps not real but only apparent, because we have not before us the case as fully on the paper books as it was presented at the first hearing.

In the Appeal of Jenkintown National Bank, 23 W. N. 359, Chief Justice PAXSON clearly marks the lines within which this discretion should be exercised; they are wide apart, leaving ample room between. In Woods v. Irvin, 28 W. N. 187, the character of the evidence which should be considered is indicated. As these appeals are coming before us in increasing numbers each term, it becomes our imperative duty to suggest an orderly practice, which we do not doubt will render the administration of justice more certain and speedy in both courts.

We now take up the testimony of ten witnesses contained in sixty-four printed pages of the paper book and endeavor to see what the issue was, and whether there was proof, or rather the absence of it, to warrant the decree.

From the testimony of King, the defendant, we gather that he sealed and delivered the bill to Fisher; he states he could not read, and that it was not read to him; that he did not know it was a judgment bill until about two years after, when

execution was threatened; he denies there was any consideration, and avers that the bill was delivered to Fisher at Fisher's request for the accommodation of Fisher. He further asserts there was a material alteration of the paper after delivery, in this, that the name of Robert T. King was added as a witness without his, the maker's, knowledge or consent. Either averment, if sustained by competent evidence, was sufficient to send the case to a jury. But, on the other side, Fisher testifies that King had full knowledge that the bill contained a power of attorney to confess judgment; that it was given for money loaned by him to King; and from the testimony of Robert T. King, whose name is on the bill as witness, argues that the alleged alteration is not such as avoids the obligation.

Here, as to the first averment, is a flat contradiction, and it is necessary to consider the circumstances as well as the other testimony bearing upon the dispute.

King was a young married man, a weaver by occupation; thrifty, probably, but as yet had accumulated but little money; his wife was niece to Fisher's wife. Fisher was a house-painter by trade, possessed of some means, apparently about six to eight thousand dollars; he was 83 years of age; his wife, who died in March, 1888, was over 75. From 1884 up to her death, this old couple had made their home for a great part of the time with King; the wife, after an illness of about two weeks, died there; the relations between them were cordial and they seem to have been mutually helpful. Still, considering their advanced age, it could fairly be presumed that Fisher, for himself and wife, owed to King reasonable compensation for bread and shelter. King, in effect, asks this inference to be drawn, and Fisher does not deny King's right to payment. King alleges he was not paid, Fisher says he was. The admissions of Mrs. King and the testimony of her sister, Harriet L. Male, corroborate Fisher. Miss Male testifies she had in her possession, during the time the Fishers were at King's, seven or eight shares of Pennsylvania railroad stock which belonged to Mrs. Fisher; that by Mrs. Fisher's directions she sold this stock and gave the money, amounting to between three hundred and fifty ($350) and four hundred dollars ($400) to Mrs. King in payment for services to Mrs. Fisher. Mrs. King admits she got the proceeds of this stock. Fisher testifies positively that

during the life of his wife the board of both, at the rate of $5 per week, was paid; that after his wife's death, when he left, there was a balance of $20 due King, which he paid. He further testifies, that during her life his wife continually assisted Mrs. King in her household duties. We think the evidence justified the court in finding that there was no indebtedness on the part of Fisher to King for support up to the time of his wife's death.

'King further claims that Fisher, after his wife's death, generally came to his house on Saturday evening and remained over Sunday; Fisher admits this, but says he also carried to the house on such visits a basket of provisions or other articles for household use and comfort.

Assuming that he was there nearly every Sunday for two years, we think it hardly sufficient basis for a presumption that King is entitled to payment for boarding his wife's uncle on Sunday, and that claim was probably disallowed as it ought to have been.

It is alleged by Fisher and not denied by King that on the 2d of December, 1887, he gave to King three hundred and fifty dollars ($350) to be used in the purchase of a house at Bridesburg, and on the 21st of June, 1888, he gave him another three hundred and fifty dollars ($350)—(Fisher says $400)—to be used in the purchase of another property. As there was no indebtedness on part of Fisher to King when this money passed, it must have been a gift or a loan. King says it was a gift, Fisher a loan. King gave no due bill, note, or other evidence of indebtedness when the money was received; in their circumstances the sum must have appeared to both a large one; nor is there anything incredible in an old man making such a gift to one who had been kind to him, and who was the husband of his niece. Taking the circumstances, with King's positive testimony, the inclination is to believe King, who says it was a gift, rather than Fisher, who says it was a loan. But there is positive testimony affecting the veracity of King which must be taken into consideration. King swears positively that when he signed the single bill in dispute, in August, 1889, he did not know it was a judgment bill, and never learned that fact until October, 1891, more than two years after, when the attempt was made to collect it. This

material statement is flatly contradicted by James Bromley, W. H. Burns, and George Shoemaker, Esq., all of whom testify that, at the time of the assignment to Bromley & Burns, on February 25, 1890, six months after the bill was delivered, and after it had been entered of record, King was active in assisting Fisher to procure the two hundred and twenty-five dollar ($225) loan on the judgment as collateral; that he called not once but several times with Fisher, and urged the granting of the loan on the assignment of the judgment then of record as security. King's attention is called to this, and he explains it only by contradicting the three witnesses. So that we may fairly assume the learned judge of the common pleas who heard King's testimony that the seven hundred and fifty dollars ($750) was a gift, and Fisher's statement in answer to a question, " It was given for the purpose to secure me to have acknowledgment for the indebtedness," disbelieved King and believed Fisher. In this view of the evidence, so far as the first point in dispute is concerned, the court was right in discharging the rule.

As to the second averment, that there was a material alteration of the instrument after delivery, the evidence shows only the parties to it were present when it was sealed and delivered by King to Fisher; Fisher then left the house with the bill and called upon Robert T. King, brother of defendant, who wrote his name in the place where should appear the name of a witness. If this was willfully done, with the knowledge and consent of Fisher, even though no additional liability was thereby imposed on the obligor, it avoided the instrument. The application of this rule does not, in case of willful alteration, depend on the injury done in the particular case, but as is said in Neff v. Horner, 63 Pa. 330, its true ground is public policy, to insure the protection of instruments against fraud and substitution. And it has been held to be a material alteration to cause the name of a person to be placed on a note as a witness who was in no respect a witness to any part of the transaction. Homer v. Wallis, 11 Mass. 312. If there be a material alteration by the payee, after delivery, willfully, however innocent the intention, or however slight the prejudice to the maker, the instrument is avoided.

But does the evidence show a willful alteration here? Robert

T. King, whose name appears as the witness, testifies tha, Fisher came to his house and asked him to go into a cigar store, and then, to use the witness's own words: "He asked me to endorse the note for Harry; he said that Harry and his wife and himself needed a little money, and he got Harry to give him that note so he could help him out, and he asked me to endorse it, and I did so." He further says, he told Fisher àt the time he had nothing to make his indorsement good, but that he intended to indorse it, not knowing any better. Fisher's testimony as to the transaction is vague; it tends to show, however, that he asked King to append his name as a witness. We assume, that the court below adopted King's account of the transaction as the correct one; probably, because he was a young man, and Fisher's recollection may have been impaired by his advanced age and infirmities. The fact, then, as found, is, that King attempted to indorse the note, but through ignorance wrote his name as a witness.

If there was no willful alteration, there is no reason for en forcing the rule, that the alteration shall avoid the instrument. The purpose of the rule is to take away the motive for alteration by a forfeiture, a penalty, which punishes the offender and deters others. But to inflict such a severe penalty for the blunder of an ignorant man accomplishes not the purpose of the law; no guilt is reached, for none exists; other blunderers are not deterred, for a forfeiture does not dispel ignorance. We are, therefore, of the opinion that under the facts of this case the law does not call for a forfeiture of the obligation.

For the reasons given, the decree of the court below discharging the rule is affirmed and the appeal dismissed at costs of appellant.