## Shiffer, Appellant, v. Mosier.

*Evidence—Written instrument—Material alteration—Addition of name of witness.*

1. The addition of the name of a witness to the signatures of a paper, after its execution, without the knowledge or consent of the obligors, is a material alteration, which renders the paper inadmissible in evidence.

2. An altered instrument is so far vitiated that no recovery can be had on its original or altered terms. It cannot be considered as void for the unauthorized change and valid in other respects, but is void altogether.

3. Any material alterations of a writing releases a party who does not consent thereto, no matter how many other parties have consented. This is so whether the alteration is fraudulent or innocent. It avoids the contract not only as to the party making it, but as to an innocent transferee, such as a bona fide assignee who was not an indorsee.

4. Subsequent assent to a material change of a written instrument is a waiver of the right to rely upon the alteration as a defense to an action brought on the instrument; but a ratification by one of several who are parties to the instrument as originally written binds him only, and not those who do not assent.

5. Where the name of a witness to the signatures of a contract is added after the execution of the contract, and without the knowledge or consent of the obligors, the contract is wholly void for a material alteration, and a suit cannot be maintained upon it although a copy of the agreement is attached to the statement of claim without the attestation, and the signers themselves are called to prove their own signature.

Argued April 13, 1909. Appeal, No. 369, Jan. T., 1908, by plaintiff, from order of C. P. Luzerne Co., Oct. T., 1905, No. 282, refusing to take off nonsuit in case of Frank E. Shiffer, surviving executor of the estate of J. B. Shiffer, deceased, to use of Gertrude I. Heeley, v. James H. Mosier et al. Before MITCHELL, C. J., FELL, BROWN, POTTER and ELKIN, JJ. Affirmed.

Assumpsit on a written instrument. Before LYNCH, P. J.

At the trial it appeared that the suit was brought on an

agreement in writing signed by seven persons. The copy of the agreement attached to the plaintiff's statement of claim showed no attesting witness.

When E. H. Hughes, a witness for plaintiff, was on the stand, plaintiff's counsel made the following offer:

We now offer in evidence the paper marked "for identification, plaintiff's exhibit 'A,'" being the agreement a copy of which is affixed to the plaintiff's statement and on which this suit is brought. The affidavit of defense not denying the signatures of the paper by the defendants under the court rules it is not necessary to prove them.

Defendants' counsel: We object to the paper because it is not the paper declared upon, the paper offered in evidence has a subscribing witness thereto and the witness must be called to establish the signatures of the obligors as the law requires.

Plaintiff's counsel: We want to add to the offer so as to get it on the record. The affidavit of defense and court rule No. 19, sec. 1, p. 34.

The Court: It appears that the instrument sued upon is identical with the one offered in evidence excepting that the copy of the one sued upon and attached to the statement in this case has no subscribing witness. The paper now offered in evidence has this in addition "witness to the seven signatures, E. H. Hughes." The effort on the part of counsel for the plaintiff seems to be to avoid proving the execution of the paper offered in evidence in the ordinary way. The objection is sustained, exception noted and bill sealed for plaintiff. [2]

"Q. I believe you testified that you were a clerk in this People's Bank in 1894? A. Yes, sir."

Paper marked "For identification, plaintiff's exhibit 'A,'" shown witness.

"Q. I show you the words 'witness to the seven signatures, E. H. Hughes.' Whose handwriting is that? A. Mine. Q. State when those words were placed upon this paper with reference to the date of the signatures? A. I could not tell you. Q. Whether before or after the paper was signed? A. After the paper was signed. Q. You were not present

when the persons whose names are signed to this paper affixed their signatures? A. No, sir. Q. You are familiar, however, with the signatures of these parties? A. I think so, yes, sir. Q. I show you the first signature on the paper. Whose signature is that?"

Defendant's counsel: We object to that as not being the proper way of proving the signature to a document that has a witness or. is attested by a subscribing witness.

Examination by defendant's counsel.

"Q. Who brought this paper to you when you first saw it? A. J. B. Shiffer. Q. That is the J. B. Shiffer whose name appears upon that paper? A. Yes, sir. Q. As the obligee in the bond? A. Yes, sir. Q. Where was it? A. In the bank, in the People's Bank. Q. Were these names all signed to it at the time? A. They were. Q. Were any of the people there? A. They were not, positively. Q. What did he say to you? A. He stated the very words 'write "witness" to the within signatures and your name.' Q. He said that to you? A. Yes, sir. Q. And in his presence you did it? A. Yes, sir. . Q. Then you handed the paper back to him? A. Yes, sir."

The Court: Objection sustained, exception noted for the plaintiff, bill sealed. [3]

Plaintiff's counsel: I offer in evidence the paper marked "for identification, plaintiff's exhibit 'A,'" with that explanation of the attestation clause, showing why it was not copied in the declaration, why it was left out of the declaration.

Defendant's counsel: We object to that until the paper is properly proven.

The Court: Objection sustained, exception noted, bill sealed for the plaintiff. [4]

Plaintiff's counsel: We now ask the court to allow the attestation clause, the words, "witness to the seven signatures, E. H. Hughes," to be stricken out or canceled on the paper marked "plaintiff's exhibit 'A' for identification."

Defendant's counsel: We object to that.

The Court: It appears that Mr. Hughes, the witness, by procurement of Mr. Shiffer, in the absence and without the

assent of the other obligors or redelivery put his name to this instrument. We think, under these circumstances, and under the cases cited, that the plaintiff would have no right to cancel the name of Mr. Hughes as a witness to the instrument, that would be practically sustaining the instrument.

Objection sustained, exception noted, bill sealed for the plaintiff. [5]

Plaintiff now stipulating that the words "witness to the seven signatures, E. H. Hughes" are by her canceled so as to restore the paper in the same condition that it was in when it was executed, offers the paper as originally executed in evidence.

Defendant's counsel: We object to the plaintiff striking out the attestation clause for the reason that the obligee in the bond fraudulently procured the said attesting witness to attach his name to said paper as a subscribing witness in the absence of the other obligors in the bond and without any request on their part for the alleged attesting witness to so subscribe his name.

The Court: It appears in the argument at bar that suit had been previously brought upon this instrument in this court and that the case was brought into trial and that the plaintiff in that case took a voluntary nonsuit. Now, this action was brought in assumpsit and the same instrument which was then declared upon is, now offered in evidence. The objection is sustained, exception noted, bill sealed for the plaintiff. [7]

James H. Mosier, sworn for the plaintiff.

Direct examination by Mr. Woodward.

"Q. Do you live in Pittston? A. West Pittston. Q. On February 13, 1894, were you a director in the People's Savings Bank of Pittston? A. No, sir. Q. I show you a paper marked 'for identification plaintiff's exhibit "A,"' and call your attention to the signature of James H. Mosier, being the first of the signatures to that paper. Please examine it and state whether that is your signature."

Defendant's counsel: We object for the reason that the paper has attached to it on its face a subscribing witness and

it appearing that the witness attached his name as a subscribing witness to the paper after its execution by the fraudulent procurement of the obligee in the bond in the absence of and without the request or assent of the obligors, the question is objected to as being immaterial and irrelevant.

The Court: The objection sustained, exception noted, bill sealed for the plaintiff. [8]

E. H. Hughes, recalled for the plaintiff.

Direct examination by Mr. Woodward.

"Q. I call your attention to a writing at the bottom of the agreement marked 'For identification, plaintiff's exhibit "A," ' which reads as follows: 'I hereby apply four thousand dollars on this within contract, the same being amount of salary paid me by resolution of the board of directors for services rendered. [Signed] J. B. Shiffer.' Do you know in whose handwriting the body of that writing is written?"

Defendant's counsel: Objected to as immaterial and irrelevant.

The Court: What is the purpose of the offer?

Plaintiff's counsel: Plaintiff proposes to show that on February 19, 1896, two years after the execution of the paper offered in evidence, the obligee, J. B. Shiffer and the assignor of the present plaintiff, being then president of the People's Savings Bank of Pittston, Pa., referred to in said agreement, remitted $4,000 of his salary as president, to apply on this contract, thereby relieving the obligors in the contract of payment pro tanto, with their knowledge and consent.

Defendant's counsel: When that offer is properly presented the defendants will be prepared to meet it. The offer as made now from the paper is a receipt, as to whose handwriting that receipt is in.

Plaintiff's counsel: Further to show by this witness that the body of the writing is in the handwriting of the cashier of the bank, Mr. Polen.

The Court: Objection sustained, exception noted, bill sealed for the plaintiff. [10]

The court entered a compulsory nonsuit which it subsequently refused to take off.

*Errors assigned* were (1) refusal to take off nonsuit; (2–8, 10) rulings on evidence, quoting the bill of exceptions.

*Wheaton, Darling & Woodward,* with them *Willard, Warren & Knapp,* for appellant, cited: Kountz v. Kennedy, 63 Pa. 187; Shepard v. Whetstone, 51 Iowa, 457; Fuller v. Green, 64 Wis. 159; Milbery v. Storer, 75 Maine, 69.

*John T. Lenahan,* with him *Cormac Francis Bohan,* for appellee, cited: Henning v. Werkheiser, 8 Pa. 518; Beary v. Haines, 4 Whart. 17; Foust v. Renno, 8 Pa. 378; Neff v. Horner, 63 Pa. 327; Craighead v. McLoney, 99 Pa. 211; Laubach v. Meyers, 147 Pa. 447; Hartley v. Corboy, 150 Pa. 23; Citizens' Nat. Bank v. Williams, 174 Pa. 66; Babb v. Clemson, 10 S. & R. 419; Fulmer v. Seitz, 68 Pa. 237; Gettysburg Nat. Bank v. Chisholm, 169 Pa. 564; Fisher v. King, 153 Pa. 3; Flitcraft v. Com. Title Ins., etc., Co., 211 Pa. 114; Lancaster Bank v. Woodward, 18 Pa. 357; Clay v. Cottrell, 18 Pa. 408; Bircleback v. Wilkins, 22 Pa. 26; Edgar v. Kline, 6 Pa. 327; Thompson v. McClelland, 29 Pa. 475.

OPINION BY MR. JUSTICE POTTER, October 11, 1909:

This was an action of assumpsit in which it was sought to recover upon an article of agreement, signed by seven persons, who stipulated to make payment of a certain sum of money to one J. B. Shiffer, within a period of three years. Some time after the execution of the paper, Shiffer asked E. H. Hughes, who was familiar with the handwriting of the signers, to attest the signatures, and this he did, without the knowledge or consent of the signers. Upon the trial the court below held that the addition of the attestation was a material alteration which destroyed the validity of the instrument, and judgment of compulsory nonsuit was entered. The correctness of this position is questioned by this appeal. Counsel for appellant concede the fact of the alteration of the paper after its execution, without the knowledge or consent of the obligors, and they frankly admit that the general rule of law in Pennsylvania is, that the addition of the name of

a witness to the signatures of a paper, after its execution, without the knowledge or consent of the obligors, is a material alteration, which renders the paper inadmissible in evidence. Such a rule was laid down by this court in Marshall v. Gougler, 10 S. & R. 164, and was followed in Henning v. Werkheiser, 8 Pa. 518; Foust v. Renno, 8 Pa. 378, and other cases.

It is also a general principle of law that: "An altered instrument is so far vitiated that no recovery can be had on its original or altered terms. It cannot be considered as void for the unauthorized change and valid in other respects, but is void altogether:" 2 Cyc. L. & P. 182, sec. c. It is further true that: "The vitiating effect of an alteration cannot be obviated by afterward attempting to restore the instrument, as by erasing words unauthorizedly inserted, especially after an attempt to recover upon the instrument in its altered form. This rule seems especially applicable in favor of one who is subject to no liability but that created by the instrument:" 2 Cyc. L. & P. 182, sec. d.

But while admitting the general rule, counsel contend that the circumstances of this case take it out of the usual order. In support of this position, they allege that the use plaintiff, Gertrude I. Heeley, was an innocent purchaser of the agreement from the executors of the payee. But we cannot find that any evidence was offered to show any such fact. The assignment of the agreement is embodied in plaintiff's statement, and it does not show the consideration, if any, which was paid, but it does show that she was one of the heirs of J. B. Shiffer, entitled to a one-third interest in his estate, and presumably the assignment was made on account of her interest in the estate. It was made when payment under the terms of the instrument was long overdue. The agreement was not a negotiable instrument, and the assignee would therefore take it subject to any defense which could be set up against the assignor. The authorities are against the position taken by counsel for appellant. Thus, in 3 Page on Contracts (1905), sec. 1529, it is said: "A material alteration avoids the written contract. Thus a material alteration of a contract, though with the consent of the other parties thereto, re-

leases a surety thereon. . . . Any material alteration releases a party who does not consent thereto no matter how many other parties have consented. This is so whether the alteration is fraudulent or innocent. . . . A material alteration avoids a contract not only as to the party making it, but as to an innocent transferee, such as a bona fide assignee who is not an indorsee. A negotiable instrument which has been altered materially is unenforceable; even in the hands of a bona fide holder without notice who takes it for value and before maturity." Kountz v. Kennedy, 63 Pa. 187, is cited in justification of the claim to disregard the alteration of the paper. But Kountz v. Kennedy has not been followed in subsequent cases. In Fulmer v. Seitz, 68 Pa. 237, Justice Agnew said (p. 242): "It is supposed that the case of Kountz v. Kennedy, 63 Pa. 187, is opposed to this view, and it is cited as authority against it. That case is a very close one, and was decided doubtingly on its peculiar circumstances. One of our number (Justice Sharswood) expressly dissented, and I gave my own assent with hesitation." And in Craighead v. McLoney, 99 Pa. 211, Chief Justice Sharswood, after referring to Kountz v. Kennedy, said (p. 214): "My own opinion is that the courts have gone far enough in permitting writings to be tampered with."

In the cases of Hartley v. Corboy, 150 Pa. 23 (29), Gettysburg Nat. Bank v. Chisholm, 169 Pa. 564 (573), and Citizens' Nat. Bank v. Williams, 174 Pa. 66 (70), this court declined to follow Kountz v. Kennedy. In the latter case Justice Green said (p. 71): "The tendency of all our recent decisions is to hold parties more strictly responsible for alterations of any kind particularly in the case of negotiable instruments, and we do not think that the ruling in Kountz v. Kennedy should be extended a single step beyond its own peculiar facts."

The second contention of appellant, that the receipt written upon the agreement in the handwriting of J. L. Polen, one of the obligors, operated as a ratification of the altered contract, we do not consider tenable. In any event, the action of Polen would affect himself only. The offer of evidence

does not show whether the receipt was indorsed before or after the attestation clause was added, but if it was made afterwards it would not be sufficient to give life to a contract which had been made void by the act of the obligee.

"Subsequent assent to a material change of a written instrument is a waiver of the right to rely upon the alteration as a defense to an action brought upon the instrument. But a ratification by one of several who are parties to the instrument as originally written binds him only, and not those who do not assent:" 2 Cyc. L. & P. 172. And in the same text-book it is further stated that: "In order that any acts may be construed as a ratification of an alteration, the particular act must be done with full knowledge of the alteration. . . . The party must have knowledge in fact, and it is no answer to say that he had means of knowledge:" 2 Cyc. L. & P. 175.

In the present case, it does not appear that there was any offer to show knowledge of the alleged payment, upon the part of anyone but Polen. We see no merit in any of the assignments of error; they are therefore overruled, and judgment is affirmed.