## Swank, Appellant, v. Kaufman, et al.

*Negotiable instruments—Notes — Attestation — Material altera-
tions—Witness signing after execution.*

1. The addition of a name as a witness to the signatures of par-
ties to a written instrument, after its execution by them and in
their absence without their knowledge or consent, is a material
alteration of the writing rendering it inadmissible in evidence; the
rule is grounded in public policy, to insure the protection of writ-
ten instruments from fraud and substitution, and it is not material
that the instrument would have been valid if not attested by sub-
scribing witnesses.

2. Where, in an action on a judgment note signed by a principal

and two sureties and attested by subscribing witnesses, the sureties denied that they executed the note, and it appeared that at the request of the principal obligor, one of the witnesses had signed the note in the absence of the alleged sureties and without their knowledge and consent, the court, the jury having disagreed, properly entered judgment for defendant sureties n. o. v.

Argued Sept. 26, 1916. Appeal, No. 67, Oct. T., 1916, by plaintiff, from judgment of C. P. Somerset Co., Feb. T., 1912, No. 206, for defendant n. o. v., in case of Josiah Swank, Cashier of the Farmers' National Bank of Somerset, Pa., v. John N. Kaufman, Stephen Gindlesperger and John M. Sala. Before BROWN, C. J., MESTREZAT, POTTER, STEWART, MOSCHZISKER, FRAZER and WALLING, JJ. Affirmed.

Assumpsit on a promissory note signed by John N. Kaufman and defendants as sureties. Before RUPPEL, P. J.

The opinion of the Supreme Court states the facts.

The jury disagreed and the court entered judgment for defendants n. o. v. under the Act of April 20, 1911, P. L. 70. Plaintiff appealed.

*Error assigned* was the judgment of the court.

*J. A. Berkey,* with him *C. L. Shaver,* for appellant.— The act of James Berkebile in attesting the signatures added nothing to and took nothing away from the contract between the plaintiff and the maker of the note, and, therefore, the validity of the note was in no wise destroyed by his act: Worrall v. Gheen, 39 Pa. 388; Fisher v. King, 153 Pa. 3; Fritz v. Commissioners of Montgomery County, 17 Pa. 130; Henning v. Berkheiser, 8 Pa. 518; Foust v. Renno, 8 Pa. 378; Hall, et al., v. Weaver, 34 Fed. Repr. 104; Xander v. Commonwealth, 102 Pa. 434; Shepard v. Whetstone, 33 Am. Rep. 143 (51 Iowa 457); Eddy v. Bond, et al., 19 Me. 461; Ogle

v. Graham, 2 P. & W. 132; Church v. Fowle, 142 Mass. 12.

*Norman T. Boose,* with him *D. P. Weimer,* for appellees.—The addition of the name of a witness to the signature of a paper after it is executed without the knowledge or consent of the obligors is a material alteration, which renders the paper inadmissible in evidence: Marshall, et al., v. Gougler, 10 S. & R. 164; Foust v. Renno, 8 Pa. 378; Henning v. Werkheiser, 8 Pa. 518; Craighead v. McLoney, 99 Pa. 211; Laubach v. Meyers, 147 Pa. 447; Fisher v. King, 153 Pa. 3; Shiffer v. Mosier, 225 Pa. 552; Everhart v. Fulmer. 58 Pa. Superior Ct. 454; Neff v. Horner, 63 Pa. 327.

OPINION BY MR. CHIEF JUSTICE BROWN, January 8, 1917:

John N. Kaufman applied to the Farmers' National Bank of Somerset, Pa., for a loan of $4,000. He was told by the cashier that it would be made if the application for it would be approved by the bank's financial committee. The application was approved, and a day or two later the cashier mailed to Kaufman, at Davidsville—some twenty miles from Somerset—a judgment note for $4,000, payable one year after date, and on it were two printed seals and one written by the cashier, the understanding between him and Kaufman being that there were to be two sureties on the obligation. Its blank spaces were filled in by the cashier. On the lower lefthand corner he wrote the word "witnesses," and, by a bracket and two crosses in his handwriting, indicated where the attesting witnesses were to sign. Kaufman returned the note by mail to the bank, bearing his signature and what purported to be those of Stephen Gindlesperger and John M. Sala, the appellees, attested by two witnesses. The bank entered judgment on the note, and, upon the petition of Gindlesperger and Sala, alleging that they had not signed it, the judgment was opened.

On the trial of the issue to determine whether their signatures were genuine, the jury disagreed. Immediately thereafter the defendants moved for judgment n. o. v., under the Act of April 20, 1911, P. L. 70. This motion was allowed, for the reason that James Berkebile had signed the note as one of the attesting witnesses after the alleged signatures of the appellees had been procured, and in their absence and without their knowledge or consent. After the plaintiff had submitted evidence to show that the note had been executed by the appellees, it was admitted in evidence, under their objection, the court reserving for future consideration the question of its admissibility, in view of the conceded fact that Berkebile had signed as a witness, as just stated.

Kaufman, the principal on the note, was the main witness for the plaintiff and testified that, after he had received it, he called Gindlesperger into his home, where they both signed it; that when Gindlesperger had signed his name to it, Annie Kaufman came into the room, and, at the request of her husband, the principal obligor, signed it as an attesting witness; that he then went to the residence of David Thomas—some two and one-half miles distant from Davidsville—where he found John M. Sala, and obtained his signature to the note; that, although there were two or three men working there at the time with Sala, he did not ask either of them to witness the signature, but went back to Davidsville and called at the blacksmith shop of James Berkebile, who was familiar with the handwriting of Gindlesperger and Sala, and, at his request, signed the note as an attesting witness.

That the addition of a name as a witness to the signatures of parties to a written instrument, after its execution by them and in their absence and without their knowledge or consent, is a material alteration of the writing, rendering it inadmissible in evidence, has long been well settled: Marshall v. Gougler, 10 S. & R. 164; Foust v. Renno, 8 Pa. 378; Henning v. Werkheiser, Id.,

518; Fisher v. King, 153 Pa. 3; Shiffer v. Mosier, 225. Pa. 552. The rule is grounded in public policy, to insure the protection of written instruments from fraud and substitution: Neff v. Horner, 63 Pa. 327; Fisher v. King, supra. 'The reason and the wisdom of it are thus set forth in Marshall v. Gougler, supra: "The rigor with which alterations, whether by design or accident, made in writings, were considered as avoiding the instrument, has been much abated. But certainly, whatever may be the course of modern decisions as to the immaterial alterations made by a stranger, the addition of subscribing witnesses to a deed, good without them, is a most material and important one, deeply affecting the interest of the party, as it furnishes, of itself, a different and distinct medium of proof. This addition is not inoperative, but materially affects the situation of the parties. Why is it that subscribing witnesses are necessarily called to prove the subscription, and that acknowledgments by the obligor will not suffice? Because the subscription is quasi a part of the deed, and anciently, the subscribing witnesses formed a part of the jury. If adding a seal to an instrument, valid without it, would avoid it, a fortiori, adding the subscription of witnesses, would; it is a falsification of a fact material to the parties. If the witnesses die, or remove out of the state, proof of their handwriting will establish the deed. It may respect lands, and the grantee lie by until they are dead, and then come out with his conveyance and proof of their handwriting, and proof of the handwriting is proof of the delivery. It is a most dangerous tampering with written instruments, and this court expressed a strong opinion of the effect of such alterations, where the alteration was quite innocent, and stood unaffected by the slightest imputation of fraud: Moore v. Lessee of Bickham and West, 4 Binn. 1." An illustration of the force of the foregoing is to be found in the case before us. If Berkebile had been dead at the time of the trial, proof that his signature as an attesting witness to the

execution of the note was genuine, would have been proof tending to establish the execution of it by the appellees. His signature would have been accepted as proof of a fact to which he could not have testified if living, for he was in no respect a witness to the transaction so far as the appellees were concerned: Homer v. Wallis, 11 Mass. 309.

If Berkebile's signature had been procured by the bank after the note had come into its possession, it concededly could not have enforced it against the sureties: Shiffer v. Mosier, supra, and why should not the act of Kaufman, under the circumstances, be regarded as the act of the bank in procuring the signature? Its cashier, with whom he negotiated the loan, prepared and sent to him the note for execution by him and two sureties. The bank's officer, in his own hands, wrote the word "witnesses" and indicated where they were to sign. In short, the bank dealt entirely with Kaufman, and sent him the note for the purpose of having him and the sureties sign it in the presence of witnesses, and the correct conclusion of the learned court below was that, if he materially altered the obligation after the sureties had signed it, the bank, which had trusted him to see that it was properly executed, and not the sureties upon it, is bound by what he did. In this respect the case is distinguishable from Fritz v. Commissioners, 17 Pa. 130, upon which the learned counsel for appellant rely; but it may be further noted that the reason given for holding that the bond in that case had not been improperly admitted in evidence was that it had affirmatively appeared that the witness attested the execution of the bond at the request of at least one of the obligors, in the absence of the obligee, and whether in the presence or absence of the party who objected to the admission of the obligation in evidence did not distinctly appear, owing to a failure of recollection on the part of the attesting witness. It was therefore said: "In these material circumstances the case is widely different from

Marshall v. Gougler, 10 Ser. & R. 169; Foust v. Renno, 8 Barr 378, and Henning v. Werkheiser, 8 Barr 518, on which the plaintiff in error relies. Under the circumstances of the case before us it would have been error in the court below to have decided as matter of law that the bond was void."

Judgment affirmed.