Newman, to use, Appellant, *v.* Cover et al.

268

Argued March 26, 1930. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

*Charles C. Greer,* with him *Ernest O. Kooser,* for appellant.—It was error to refuse binding instructions, to deny judgment non obstante veredicto for plaintiff and to enter final judgment on the verdict: Barnard v. Kell, 271 Pa. 80; Marshall v. Gougler, 10 S. & R. 163; Swank v. Kaufman, 255 Pa. 316; Burke v. Harkins, 296 Pa. 414; Simpson v. Bovard, 74 Pa. 351; Grotefend v. Laundry Co., 88 Pa. Superior Ct. 510; Com. v. Gutelius, 287 Pa. 441; Kentucky Bank v. Bank, 1 Parson's Equity 180; King v. Bank, 227 Pa. 22; Wolfgang v. Shirley, 239 Pa. 408, 410; P. R. R.'s App., 86 Pa. 80, 84; Shattuck v. Cement Co., 205 Pa. 197, 210.

*Robert C. Hoerle,* for appellee.—The legal effect of the phrase added to the note was for the court alone: Lancaster v. Barrett, 1 Pa. Superior Ct. 9, 13. And at the trial, the court properly charged the jury that the phrase "Given for the debt of Park O. Cover," was a material alteration: Craighead v. McLoney, 99 Pa. 211; Iron City Nat. Bank v. McCord, 139 Pa. 53; Bensinger v. Wren, 100 Pa. 500; Janes v. Benson, 155 Pa. 489; Volk v. Shoemaker, 229 Pa. 407; Shiffer v. Mosier, 225 Pa. 552.

OPINION BY MR. CHIEF JUSTICE MOSCHZISKER, May 12, 1930:

The five defendants in this case moved the court below to open a confessed judgment and let them in to a defense; this was done and the jury found in their favor. The use-plaintiff then moved for judgment n. o. v., which was refused. Final judgment was entered for defendants, and the use-plaintiff has appealed.

On June 9, 1926, the five defendants executed a demand note payable to C. J. Newman, for $12,000, and left it with Park O. Cover, one of the makers, for discount at the Peoples' State Bank of Boswell, of which Newman, the payee on the note and legal plaintiff here, was cashier. Cover at that time was the largest stockholder in a corporation called Park O. Cover, Inc., and the manager of it. This concern ran a garage at Johnstown, and dealt in motor vehicles. When the note in suit was executed, the account of Park O. Cover, Inc., at the Peoples' Bank, was overdrawn, as also was Cover's personal account. Cover took the note, signed by himself and the four other defendants, to the bank, of which he was an old customer, for purposes of discount. He presented it to Newman, who instructed him to add to the paper, which was in the usual form of a judgment exemption note, the words, "Given for the debt of Park O. Cover"; this alteration was executed in the presence of Newman. The change thus made was calculated to

and did in fact benefit Newman's bank as well as Cover (as will be shown more fully later on) ; it was effected without the knowledge or consent of the four other defendants, none of whom at any time ratified Cover's betrayal of trust. On the contrary, when informed of the alteration, they promptly petitioned the court below to open the judgment entered on the note.

Some time in May, 1926, prior to the making of the note in suit, it became known to the five defendants that the business of Cover, Inc., was not prospering and that Cover himself was financially embarrassed. Cover, with his brother, R. W. Cover, and three employees (being the five defendants in this suit), decided to form a new corporation to be known as the Park O. Cover Co., in which all were to own stock and have a financial interest. Park O. Cover was selected as treasurer. It was agreed that the proposed company should have $50,000 authorized capital stock. In the course of the negotiations and conferences for the formation of this new concern, the advisability of purchasing the business of Park O. Cover, Inc., was discussed, but there is nothing before us to show that this was agreed upon. It does appear, however, that counsel for defendants would not permit the execution of the charter application for the proposed company until $5,000 in cash was deposited in the hands of its treasurer. For the purpose of raising necessary cash for the new corporation, the five defendants, together with the wife of one of them, on June 9, 1926, executed the instrument in suit and left it with Cover on a mutual understanding that he was to have the note discounted at the Peoples' Bank, for the purpose just mentioned.

On June 14, 1926, judgment was confessed on the note in the court below, and June 16th, a statement of this judgment was exhibited to the board of directors of the Peoples' Bank, which institution accepted the note and judgment as security for $8,000, then advanced by it. J. M. Wright, the use-plaintiff, who was Newman's fa-

ther-in-law, paid the remaining $4,000, to make up the full amount of the note, $12,000. The bank placed the whole fund to the credit of Park O. Cover, and then forthwith appropriated it toward liquidating Cover's individual indebtedness and the indebtedness of Park O. Cover, Inc., to that institution; none of the other makers of the paper in suit nor the new corporation, for whose benefit it was to be discounted, received any part of the proceeds or profited therefrom. The entire judgment entered on the note was subsequently assigned by Newman to Wright, the present appellant.

The real question in the case is, In the eyes of the law, was the alteration, made by Cover at the demand of Newman, a material one, which would prevent recovery by those taking through the latter? The trial judge charged that it was, and that, under the circumstances above stated, the leaving of the note with Cover for purposes of discount did not constitute him the agent of the other defendants to make the alteration in question, or estop them from complaining of it. Appellant contends that the court below erred in adhering to these views; but we are not convinced there was error in that regard.

A note to 2 Corpus Juris 1180, section 11, plainly states the broad principle which underlies the rule forbidding the enforcement of a materially altered instrument, thus: "The policy of the......law that an unauthorized material alteration of a written instrument by the holder, or with his consent, vitiates it as to nonconsenting parties, is to preserve the integrity of legal instruments by taking away the temptation of tampering with them. [Therefore,] the law does not permit the plaintiff to fall back upon the contract as it was originally; [on the contrary,] in pursuance of a stern but wise policy, it annuls the instrument as to the party sought to be wronged."

In Craighead v. McLoney, 99 Pa. 211, 214, Chief Justice SHARSWOOD truly said that "Each case" where the materiality of an alteration to a written instrument is

involved "must stand much more on its own facts than upon the rules announced in any given case"; but guiding principles which govern a case such as the present will be found discussed by us in Shiffer v. Mosier, 225 Pa. 552. There the paper sued on was, as here, a nonnegotiable instrument, signed by several persons, who stipulated that they would make payment of a certain sum of money to the payee (plaintiff). After the execution of this paper, the payee asked a stranger, who was familiar with the handwriting of the makers, to sign his name as a witness, which he did, without the knowledge or consent of defendants. This unauthorized attestation was held to constitute a material alteration, and plaintiffs were denied the right of recovery. We affirmed on appeal, stating, inter alia, that, under our cases (citing them), such an addition to a written instrument constituted a material alteration, and that (page 558) "An altered instrument is so far vitiated that no recovery can be had on its original or altered terms; it cannot be considered as void for the unauthorized change and valid in other respects, but is void altogether." At page 559, we said, "Any material alteration releases a party who does not consent thereto......[and] avoids a contract not only as to the party making [the alteration] but as to an innocent transferee." See also Swank v. Kaufman, 255 Pa. 316, as to the signature of a witness, subsequently added, constituting a material alteration. In Shaub v. Shaub, 71 Pa. Superior Ct. 456, 467, the Superior Court held that, under the peculiar facts of that case, the paper attacked might stand in law despite a subsequent witnessing, the court saying that the attestation, or alteration, appeared to have been done "without connivance or unlawful purpose." If such considerations can be taken into account, it will be observed that the alteration in the present case is not only material (as will be shown later on), but the making of it appears to have been accompanied by both connivance and unlawful purpose.

Daniel on Negotiable Instruments, volume 2, page 1578, section 1394, contains the following statement, which is enlightening here: "It has been held that if a bill be expressed generally 'for value received,' and words are added describing such consideration as 'for the good will and lease in trade' of a certain person [citing Knill v. Williams, 10 East. 431], or 'for a certain tract of land,' it is materially altered and avoided, [the principal reason being] that it makes the note a confession in evidence of a fact which might otherwise require extraneous proof."

Two decisions from other jurisdictions, where unauthorized additions, made by one to whom an ostensibly complete note had been entrusted, were held to constitute material alterations, also will be helpful at this point. In Low v. Argrove, 30 Ga. 129, 131-2, it was held that "where a promissory note does not state that it is given for any consideration, not even for value received, . . . . . . an addition to it stating . . . . . . that it is given for a certain [specific consideration] is a material alteration." Then in Harnett v. Holdrege, 97 N. W. (Neb.) 443, the unauthorized addition, "This note to be exchanged for consolidated mortgage bonds of Nebraska and Northwestern Irrigation Company when issued at 90," was held to be material.

As to the materiality of such an alteration as the one here involved, years ago Chief Justice SHARSWOOD, in Craighead v. McLoney, supra, 215, well said: "It is a mistake to infer that whether the pecuniary liability is increased . . . . . . is the test" of the materiality of an alteration in a written instrument; "any alteration which changes the evidence or mode of proof is material." In that case, it was laid down as a general principle that the alteration of a written instrument in such a manner as to impose on a promisor a peril which he would not otherwise have incurred would be accounted a material alteration even though his pecuniary liability was not increased. Along the same line, 2 C. J. 1174-5, section 4,

states that an alteration on a written instrument is material "where it changes the evidence or mode of proof," and well remarks that, in considering a question of the materiality of an addition to a writing, "that is material which may become material."

The foregoing rules may be applied to this case. Here, with the alteration on its face, the note is a certification by the makers generally that it was given, not to raise money for the new corporation in which all the makers were interested (the purpose in view when the note was executed), but for the debt of Park O. Cover alone. Entirely aside from the special fact that this addition to the note was made for the purpose of diverting the proceeds to be realized therefrom to the sole use of the maker who perpetrated the alteration, and away from the other makers,—which purpose was accomplished,—two other points stand out as showing in a more general way the materiality of the alteration, or as bringing this case within the above stated general rules: (1) If, immediately on discovery of this false certification, it had not been challenged by the comakers of the note, they might later find themselves obliged to explain away an apparent acquiescence in or waiver of the unauthorized change (Shiffer v. Mosier, 225 Pa. 552, 560) which had been made by Cover; (2) Should any one or more of the comakers take up the note and, in a subsequent suit for contribution against others of them, attempt to introduce the writing in evidence, if the point of alteration were then raised for the first time, the burden of explanation would be on the one producing the instrument: Craighead v. McLoney, supra, 215. These two points, of themselves, are enough to show the materiality, in law, of the alteration.

It is further correctly stated in 2 C. J. 1195, section 37, that, "Any change in a written instrument is material which makes a new stipulation or condition." See also 3 Am. & Eng. Encyc. of Law & Pr., page 402, paragraph (c). Here, a new stipulation was added to the

note in suit and this turned a paper prima facie executed for the mutual benefit of all its makers into an obligation to answer for the debt of one of them, thus, in the eyes of the law, prejudicing all the makers but Cover and advantaging him. "If the change is one by which the party [or parties] not consenting thereto would be prejudiced, or which would enlarge or increase the liability of such party, or is to the advantage of the party making it, it is unquestionably material in the sense of a vitiating alteration": 2 C. J. 1173-4, section 3. As said in Benton v. Clemmons, 157 Ala. 658, 660, whether an alteration is material depends upon whether it makes the "instrument speak a language different in legal effect from that which it originally spoke, which carries with it some change in the rights, interests, or obligations of the parties." See cases in 1 Amer. Digest (2d Dec. ed.), "Alteration of Instruments," page 1, section 2. As between the parties to the present note, before the words "Given for the benefit of Park O. Cover" were added, the makers had an interest in and a right to receive the discount value of the obligation, and no liability on their part would exist until value was paid for the paper; but, if allowed force, those words would have the effect of making all the signers liable immediately to pay the existing debt of one of them, in the amount of the note. Thus it may be seen that the alteration, if allowed to stand, carried with it a change in the "rights, interests and obligations" of Cover's comakers.

Contrary to what appears to be the theory of appellant, an alteration does not need to "make the note another and different" instrument in the eyes of third parties; for if the legal effect, so far as the makers are concerned, is in any substantial way changed, so as to place a burden on them, or any of them, which they would not otherwise have been subject to, the alteration is material: Craighead v. McLoney, supra; Flint & Booth v. Craig, 59 Barb. (N. Y.) 319, 332; Com. Nat. Bank v. Baughman, 27 Okla. 175, 177. The test whether an in-

strument has been materially altered is not only whether the change or addition actually increased the liability of the complaining parties or otherwise injuriously affected them, but also whether, under any probable circumstances, it could have so affected them. See Holthouse v. State, 49 Ind. App. 178, 184, 97 N. E. 130, 132.

It must be kept in mind that the note in suit was not a negotiable instrument; therefore all persons who took it from Newman, the payee, were fixed with notice of the circumstances attending the alteration: Janes v. Benson, 155 Pa. 489, 491-2; Shiffer v. Mosier, 225 Pa. 552, 558; Volk v. Shoemaker, 229 Pa. 407, 410. The law is stated as follows in 2 C. J. 1176, section 5: "Not only will an alteration vitiate the instrument as between the immediate parties, but it will vitiate it even as against a bona fide holder without notice, as the latter can acquire no right or title other than that of the person under whom he claims," citing the Pennsylvania case of Shiffer v. Mosier, supra. See also 2 C. J. 1231, section 102, where it is said that "The vitiating effect of an alteration is available [not only] against the person making it [but against him] who is in some way a party or a privy to such alteration," and, Ibid., page 1232, section 103, which states the general rule that "A change made by the maker or obligor, with the knowledge or at the instance of the payee or obligee, will discharge a comaker, obligor or surety not consenting to such change."

The alteration with which we are here concerned, was a material one, and, under the circumstances of this case, sufficient to prevent recovery. When, as here, the payee of a nonnegotiable note aids one of several makers, in the absence of the others, in adding to the paper words which are calculated to further the misappropriation, to the special benefit of the one making such alteration, of money derived from the note, and to divert it from the mutual benefit of all the makers, and when, moreover, the alteration is such as to work a change in the obligation of the other makers so far as the conditions under

which they were to become liable are concerned, and to necessitate explanatory proofs should it become necessary to offer the note in evidence, under such circumstances neither the payee nor those subsequently taking the instrument from or through him are in a position to recover thereon, unless able to show that the change was authorized before it was made, or that it was subsequently ratified; neither of which last named things are shown in the present case.

Appellant claims, however, that, since the instrument sued on was permitted by the other defendants to remain in the hands of Cover and the alteration was written by him before any money was paid on the note, the change must be presumed to have been made pursuant to authority previously given to Cover by the other makers. This contention overlooks the fact that the alteration was made in Newman's presence and at his express suggestion and demand; under such circumstances, there is no basis for the presumption relied on by appellant. On the question of alleged agency, appellant cites Simpson's Executor v. Bovard, 74 Pa. 351, 361, but there the evidence showed that the one who made the alteration was clothed with authority to "fill in" a note which had been given in blank; whereas, in the present case, all the evidence shows that the note was complete when it came into Cover's hands, and there is no proof that he was given authority to add anything, or that he stood in the position of an agent whose office it was to revise, alter or rewrite the instrument. As rightly said in 2 C. J. 1238, section 112, "The principle of implied agency [to alter] can arise only when the instrument is in an unfinished state." Mere custody or possession does not import authority to make, or consent to, a material change in an instrument: 2 C. J. 1238, section 109. "One of several obligors, who has possession of a completed written instrument, for the purpose of delivering it to the obligee, has no implied authority to make material alterations therein which will

bind his coöbligors": 2 C. J. 1238, section 112. As stated in Barton Sav. Bank & T. Co. v. Stephenson (Vt.), 51 L. R. A. (N. S.) 346, 351, "No agency to alter will be implied from any other agency, special in its nature"; therefore Cover's authority "to present the note for discount" can in no sense be interpreted as giving him authority to materially alter it.

Finally, appellant contends that the case before us is ruled by the equitable doctrine of estoppel, that a loss must be visited on the one of two innocent parties who made it possible; but this rule does not apply "where [as here] the person setting up the estoppel is chargeable with notice of the facts." See 21 C. J. 1172, section 176. Moreover, it "operates only to protect those who, in dealing with others, exercise ordinary caution and prudence": 21 C. J. 1173, section 177. Here, the note in suit, being a nonnegotiable instrument, apparently executed so that the funds raised on it should be used for the mutual benefit of all the makers, the payee named therein should, before aiding in its alteration, have made inquiry as to the extent of Cover's authority in the premises; not having done so, he and all others dealing with the paper through him are bound by what could thus have been learned.

The presiding judge ruled that, if the jury found the issues of fact, which were presented at the trial, in favor of defendant, then, on such findings, in the eyes of the law, the alteration here involved was a material one and plaintiff could not recover; these instructions were right, and we see no error in the record.

The assignments are all overruled and the judgment is affirmed.