22617, 22618. COOK *v.* PARKS.

DECIDED APRIL 26, 1933.

*W. I. Geer,* for plaintiff in error. *P. Z. Geer,* contra.

JENKINS, P. J. Two cases, involving the same parties, similar instruments, the same facts and circumstances, and the same questions, are presented to the court and may be determined together. In each of the two chattel-mortgage foreclosures, the defendant's

affidavit of illegality set up as a defense that the instrument had been rendered void by the fact that, at the time of its execution, only one witness, not an official, appeared on each instrument, and that it had been materially altered without consent of the maker by adding the names of two witnesses, one a notary public, neither of whom was present when the paper was executed. Both instruments were recorded. Each instrument promised to pay to the order of the plaintiff on a specified date $175 in one sum, besides interest, and, in addition to the usual provisions in promissory notes, contained a bill of sale or chattel mortgage including the following provisions: "The holder shall have the option to declare this paper instantly due and collectible, if (a) should any of the property herein described be seized or levied on by any process or pretext whatever, (b) should any of same be used for any purpose prohibited by law, (c) should any of same be carried beyond the limits of the county in which the maker now resides or should such be attempted or threatened, (d) should any of the instalments be not paid at maturity thereof, (e) should the maker hereof die, or (f) be adjudicated a bankrupt, or (g) apply for a homestead or exemption, or (h) should any part of said property become wrecked, burned, lost, damaged or destroyed, and (i) should any representation herein made be found untrue."

In one case the mortgagee and payee of the note demurred generally and specially to the affidavit of illegality, and in the other made an oral motion to strike and dismiss, upon the grounds that the affidavit set forth no defense or reason why the mortgage fi. fa. was proceeding illegally, that the negotiable-instruments law had no application to a mortgage, and that no alteration was shown that would render the instrument void. Error is assigned on the judgments sustaining the demurrer and the motion and dismissing each of the affidavits of illegality.

1. The fact that a note, in form negotiable, contains on its face a reference to collateral security for the payment thereof, or that it is secured by a mortgage on real or personal property, does not destroy its negotiability. 8 C. J. 127, § 221.

2. While there are adjudications from a number of States that any provision in a note secured by a mortgage, to the effect that, if the maker shall do any act impairing the value of the security, the mortgagee may at once collect the note and foreclose the mortgage,

amounts to an agreement to do other things besides the payment of a sum certain in money, with the result that it renders the instrument non-negotiable, the better, more reasonable, and more generally accepted rule as to such clauses accelerating the maturity of the instrument appears to be that any additional promise which does not in any wise impair the obligation to pay the certain amount, but merely tends to facilitate rather than impede its collection, does not affect the negotiability of the instrument. Beutel's Brannan's Negotiable Instruments Law (5th ed.), pp. 140-144; 8 C. J. 126, 138 (§ 237), 139 (§ 239). To hold otherwise, unless so impelled by the plain mandate of the statute, would manifestly hamper a large per cent. of the most ordinary business transactions involving commercial papers. Thus, as one of many instances which may be conceived, a negotiable instrument secured by a lien on realty would be comparatively valueless, were it not possible to provide that the mortgagor should keep and maintain insurance on the improvements, or, in default of doing so, that the note and mortgage would become at once due and payable.

3. Under the foregoing rules, the obligations involved were negotiable instruments.

4. The general law now of force in this State (Civil Code of 1910, § 4296) provides that "if a written contract be altered intentionally, and in a material part thereof, by a person claiming a benefit under it, with intent to defraud the other party, such alteration voids the whole contract, at the option of the other party." What constitutes a material alteration of a negotiable instrument is determined, however, not by the provisions of the general law just stated, but by the provisions of the negotiable-instruments law defining as a material alteration "any other change or addition which alters the effect of the instrument in any respect." Ga. L. 1924, p. 151, sec. 125 (Michie's Code of 1926, § 4294(125)); Beutel's Brannan's Neg. Instr. Law (5th ed.), 964, 971, §§ 124, 125.

5. The rule of the common law as to what constituted an alteration which would avoid the contract was very strict. It was indiscriminately punitive, and did not attempt to adjust the consequences of the act according to the justice and propriety of any particular case. Accordingly, previous to the adoption of the code, an instrument was voided not only by a material and fraudulent alteration by a party claiming a benefit thereunder, but even by an alter-

ation by a stranger, whether done fraudulently or innocently. Under that rule anything would be material which varied the rights and obligations of the parties in the "minutest particular." *Broughton* v. *West*, 8 *Ga.* 248. The strictness of this rule was relaxed by the adoption of the code, containing what is now section 4296 of the Civil Code of 1910, the provisions of which law became the rule in this jurisdiction as to all instruments until the adoption of what is known as the uniform negotiable-instruments law (Michie's Code, § 4294(1) et seq.), which reverted to a stricter rule of its own relating to that particular class of instruments.

6. The case of *International Harvester Co.* v. *Davis*, 13 *Ga. App.* 1 (78 S. E. 770), was determined prior to the adoption of the negotiable-instruments law, and under the provisions of code-section 4296, which then controlled all contracts negotiable and otherwise. It holds in effect that, under the statute governing that decision, in order to vitiate the instrument, the alteration must not only have been material, but must have been made with *"intent to defraud."* The theory of that case was that the addition of an official subscribing witness was not material, nor could it have been made with "intent to defraud," since the execution of the mortgage was in fact admitted. The statutory element of fraud with intent to injure thus controlled that decision.

7. The rule under the negotiable-instruments law, as already stated, is different. There "any change or addition which alters the effect of the instrument in any respect" is a material alteration. "The rule supported by the weight of authority is, that if the legal import and effect of the instrument is in fact changed, it does not matter how trivial the change may be, or whether it may be beneficial or detrimental to the party sought to be charged on the contract, as where it changes the evidence or mode of proof;" that "where the addition of an attesting witness to an instrument has the effect of extending liability under the statute of limitations, or of facilitating or interfering in any manner with the proof of the execution of the instrument, the procuring of a witness to sign as an attesting witness after the execution of the instrument, without the consent of the maker, is material and constitutes an alteration." 2 C. J. 1174 (§ 4), 1207 (§ 58). That the alteration was fraudulently made for the purpose of causing actual injury, or that it did bring about an injury, is not the test of materiality. It is equally

unimportant whether the alteration was beneficial or injurious to the party whom it is sought to charge on the instrument. ·The sole question is whether the rights of the promissor have been materially affected, whether the effect of the instrument is the same as when signed. "That is material which might become material, and any alteration which may in any event alter the rights, duties or obligations of the person sought to be charged, is material in the legal sense." Courts are not allowed to say that the maker would have made the contract as altered, and thus make for him that which he refused or failed to make for himself. L. R. A. 1915A, note 167; 1 R. C. L. 967 (§ 4).

8. Under the law of this State, in order for a written instrument to be introduced in evidence, "the subscribing witness must be produced in all cases" except those falling within the express statutory exceptions. Civil Code (1910), § 5833. In Alabama, where a similar statute existed, and the name of a subscribing witness was added, as was alleged to have been done in the instant case, even without fraudulent intent, the Supreme Court, in the case of White Sewing Machine Co. v. Saxon, 121 Ala. 199 (25 So. 784), said, that "upon the general principle that any alteration is material which changes the effect and operation of the contract on the face of the paper, either by modifying original stipulations or by adding new ones express or implied, it would seem clear that the addition of an attestation, which imports the agreement of the parties upon and selection by them of a person to be the repository of the proof of execution and of the surrounding circumstances, and under our laws, has the effect of requiring the attesting witness to be called to prove execution, and of authorizing execution to be proved if he be dead or beyond seas by proving his signature, materially affects the status and rights of the parties under the contract; and, as has been often said by this court, it is of no consequence whether the alteration if allowed to operate would be beneficial or detrimental to the party sought to be charged on the contract; the important question is not that, but whether the integrity and identity of the contract has been changed." See also Shiffer v. Mosier, 225 Pa. 552 (74 Atl. 426, 24 L. R. A. (N. S.) 1155, 1158, notes); Swank v. Kaufman, 255 Pa. 316 (99 Atl. 1000, L. R. A. 1917D, 826, 828, notes); Carson v. Woods (Mo.), 177 S. W. 623; Yancey v. Denham, 211 Ala. 138 (99 So. 851); Homer v. Wallis,

11 Mass. 309 (6 Am. D. 169) ; Girdner v. Gibbons, 91 Mo. App. 412 ; Allen v. Jordan, 3 N. C. 132. Especially would this rule seem to apply where, as in the instant case, the alleged additional witness to the instrument was an official witness, such as to authorize its record. Under the law of this State, in order to be recorded, a mortgage on personalty "must be executed in the presence of, and attested by, or proved before, a notary public," or other designated official. Civil Code (1910), § 3257. A duly executed mortgage, when duly recorded, is admissible in evidence in any court in this State without proof, the same as a registered deed, unless a forgery affidavit is filed. Civil Code (1910), § 3261, 4210. Accordingly, not only did the alleged addition of a witness alter the effect of the instrument by changing the repository of the proof of execution, but, by reason of the fact that the witness was an official witness, such addition facilitated the proof of the execution of the instrument by admitting it in evidence in any court in this State without proof. The authorities seem uniform in holding that any alteration is material which facilitates proof of the instrument's execution. 2 C. J. 1174, 1207. Furthermore, under the terms of the negotiable-instruments law, it would seem that the addition of an official witness, so as to admit the instrument to record, must necessarily "alter the effect of the instrument," when, by such added privilege to register the mortgage, the holder is enabled to maintain it as a prior lien upon the property covered against the world.

9. It was therefore error to strike and dismiss the defendant's affidavits of illegality, setting up that the instruments sought to be foreclosed had been voided by the addition of the names of two witnesses, one a notary public.

*Judgments reversed. Stephens and Sutton, JJ., concur.*