BETTY HUTCHESON, a/k/a ELIZABETH HUTCHESON, Plaintiff-Appellee, *v.* DR. HAROLD HERRON, Defendant-Appellant.

(No. 54240;

First District—December 7, 1970.

*Rehearing denied January 19, 1971.*

Silverstein & Stein, of Chicago, for appellant.

Brody & Gore, of Chicago, (Louis Dennen, of counsel,) for appellee.

Mr. PRESIDING JUSTICE BURMAN delivered the opinion of the court:

This is an appeal from two judgments of the Circuit Court of Cook County entered on behalf of plaintiff, Elizabeth Hutcheson, against defendant, Dr. Harold Herron, for the principal amount of two judgment notes plus interest.

The defendant contends, on appeal, (1) that the findings of the Circuit Court are against the manifest weight of the evidence, (2) that alterations of the notes after execution rendered them unenforceable, and (3) that the Circuit Court was not empowered to open the judgment by confession and enter two new, separate, and distinct judgments.

Dr. Harold Herron executed two judgment notes on December 17, 1963, payable to Betty or Byron Hutcheson in the amounts of $3,000.00 and $7,500.00. Byron Hutcheson, one of the alternative payees on the notes, died on November 4, 1966. His estate was duly probated in the Circuit Court of Cook County, but the notes executed by Dr. Harold Herron on December 17, 1963, were not included in the probate estate.

Elizabeth Hutcheson commenced this action as the possessor and surviving alternative payee on the notes. Judgment by confession was entered on her behalf for the principal of both notes plus interest on November 6, 1967. The judgment was opened upon the verified petition of the defendant who was given leave to file an answer and later leave to file an amended answer. The judgment by confession stood as security.

The matter came to trial before the Circuit Court without a jury on February 4, 1969. We summarize the evidence. Dr. Herron testified that on December 17, 1963, he went to Byron Hutcheson's home with his son, Stephen, where, in the presence of his son and Byron Hutcheson, he filled

out and signed, in red ink, the form judgment notes involved in this litigation. He testified further that the insertions on the note written in blue ink were not in his handwriting and were not on the notes when he executed them. He stated that he received no money from Byron Hutcheson and that he had executed the notes solely as an accommodation to Hutcheson. "He [Byron Hutcheson] stated that he wanted me to sign the notes because he had a matter that he wanted to use the money for without anybody's knowledge and just sign the notes as a procedure so he could show his wife, and forget it." Dr. Herron admitted that he borrowed $5,000.00 from Byron Hutcheson in 1959, and that $3,000.00 was due and owing on that loan.

Blue ink insertions appear in three places on each of the notes. The words "5% int." appears in blue ink on each of the notes in the space provided for the insertion of the interest rate on the form judgment note; the words "1 yr." in the $3,000.00 note and "2 yrs." in the $7,500.00 note appear in blue ink and transform those notes from demand notes to notes payable one year after date and two years after date respectively; a line in blue ink on each note crosses out the printed words in the cognovit "and at any time after date."

Stephen Herron, the defendant's son, testified that he accompanied his father to Byron Hutcheson's home on December 17, 1963, and that Byron Hutcheson asked his father to sign the two notes "so that he [Byron Hutcheson] could use the money himself." He saw his father sign the notes, but at no time did he see Byron Hutcheson give his father any money.

Elizabeth Hutcheson, the plaintiff, testified that Dr. Herron and his son, Stephen, came to their home on about December 14, 1963. At that time she saw her husband give Dr. Herron $7,500.00 in cash. She saw the notes involved in this litigation for the first time a few days after December 17, 1963. Her husband explained to her that "the doctor had given him two notes, one for the balance of $3,000.00 on a 1959 loan and a note for the $7,500.00 that was given him a few days prior." She testified that the notes were in the same condition at trial as they were when she first saw them and that the insertions made in blue ink were in the handwriting of her husband. On cross-examination she explained that her husband did not give Dr. Herron a check for $7,500.00 "because the Doctor had to have cash."

The two cancelled checks signed by Byron Hutcheson were received in evidence. Both checks were dated December 13, 1963; one in the amount of $5,000.00 was made payable to cash and the other in the amount of $2,500.00 was made payable to A. C. McClurg & Co., the firm at which Byron Hutcheson was employed as a vice president.

Ben Tsusake, a former foreman of McClurg's shipping department, testified that Byron Hutcheson approached him and told him that he was having trouble with a girl friend and needed money for that purpose. Hutcheson asked him to sign a note, but he refused "because I (Tsusake) could never cover the $5,000.00."

We first consider whether the finding of the Circuit Court that Dr. Herron executed the notes for value is against the manifest weight of the evidence. Dr. Herron admitted that he borrowed $5,000.00 from Byron Hutcheson in 1959, and that there is still due and owing a balance of $3,000.00 on that indebtedness. He insists, however, that the money is due to Byron Hutcheson's estate and not to the holder of the $3,000.00 note. Elizabeth Hutcheson testified that her husband cashed checks amounting to $7,500.00 on December 13, 1963, and that she saw her hubsand give the cash to Dr. Herron. The two cancelled checks totalling $7,500.00 were received in evidence.

■■ When reviewing a record we do not sit as a fact finding body. Where there is sufficient credible evidence, the findings of the trial court will be affirmed. The trial judge, sitting without a jury, has a duty to sift the conflicting evidence and to draw reasonable inferences therefrom. He is in a superior position to evaluate the testimony of the witnesses who appear before him. *Brown v. Zimmerman*, 18 Ill.2d 94, 163 N.E.2d 518 (1959); *Schulenburg v. Signatrol Inc.*, 37 Ill.2d 352, 226 N.E.2d 624 (1967). We believe that there is ample evidence to support the findings of the Circuit Court that consideration was given to Dr. Herron for the execution of the notes. A contrary conclusion is not manifestly evident.

We note too, the variety of positions taken by the defendant throughout the proceedings. In his verified petition to open the judgment by confession, filed on May 9, 1968, the defendant stated that the notes were paid and satisfied. In his verified answer, filed on May 15, 1968, he denied that he executed and delivered the notes for value. Finally, in his verified amended answer, filed on January 31, 1969, he stated for the first time that he executed the notes as and for the accommodation of Byron Hutcheson.

We next consider the contention that the alterations of the notes after execution render them unenforceable. Both of the notes were executed after July 1, 1962, and are consequently governed by the provisions of the Uniform Commercial Code (Ill. Rev. Stat. 1963, ch. 26). The notes used were the usual printed forms. Dr. Herron in his own handwriting filled in the principal amount of the notes, the date, his name as maker, the names of the payees, and his signature. The note forms provided space to specify the rate at which interest would be paid on the notes,

but this space was left blank on the notes as executed by Dr. Herron.

■■ When a person signs and executes a form instrument without filling in all the blanks, the person by implication authorizes a holder of the instrument to fill in the empty blanks in accordance with an underlying agreement. In the absence of evidence tending to show that the completion of the instrument was unauthorized, the court will presume that the instrument incomplete when executed was properly filled out. See *Jewell v. Rock River Paper Co.* (1881), 101 Ill. 57; *White v. Alward* (1889), 35 Ill.App. 195; *Kramer v. Schnitzler* (1915), 268 Ill. 603, 109 N.E. 695; *Keller v. State Bank of Rock Island* (1920); 292 Ill. 553, 127 N.E. 94, 9 A.L.R. 1082; *Krueger v. Dorr* (1959), 22 Ill.App.2d 513, 161 N.E.2d 433.

■■ Dr. Herron testified that there were no interest provisions in the notes when he executed and delivered them to Byron Hutcheson, but there is nothing in Dr. Herron's testimony or in the record to indicate that Byron Hutcheson was unauthorized to insert the interest rates. On the record before us, we must conclude that the trial judge was correct in finding that the provisions for interest were properly filled out. In the view we take, we need not consider the allocation of the burden of proof or the applicability of § 3—115 of the Uniform Commercial Code (Ill. Rev. Stat. 1963 Ch. 26 § 3—115).

Byron Hutcheson did add the words "1 yr." to the $3,000.00 note and the words "2 yrs." to the $7,500.00 note and he did strike out the words "and at any time after date hereof" from the cognovit of each note. Section 3—407 of the Uniform Commercial Code (Ill. Rev. Stat. 1963 Ch. 26, § 3—407) provides in relevant part:

§ 3—407. Alteration

(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in

(a) the number or relations of the parties; or

(b) an incomplete instrument, by completing it otherwise than as authorized; or

(c) the writing as signed, by adding to it or by removing any part of it.

(2) As against any person other than a subsequent holder in due course.

(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

Art. 3

(b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.

■■ The Illinois Committee comments to § 3—407 states, "The term 'fraudulent' probably requires a finding that the alteration has attempted to impose an obligation or obligations upon the maker or other party against whom enforcement is sought additional to his obligation on the instrument at the time he signed it." We agree that this is the correct test to apply when determining whether an intentional alteration is fraudulent. Dr. Herron admittedly was obligated, under the printed form to pay the notes on demand. Under the notes, as altered, demand could not be made upon him on the $3,000.00 note until one year after date, and on the $7,500.00 note until two years after date. This in no way increased his obligation under the note. We, therefore, conclude that the addition of the maturity dates and the striking of the words from the cognovit were not fraudulent nor unauthorized, and consequently, that Dr. Herron is not discharged on the notes.

The cases relied on by the defendant concern facts which are wholly dissimilar from those here, and we believe them to be inapplicable to support the defendant's position that the altered notes were void.

■■ We finally consider the contention that the Circuit Court erred in entering two separate judgments after the single default judgment by confession was opened. Section 50 of the Civil Practice Act (Ill. Rev. Stat. 1967 Ch. 110, § 50) provides in relevant part:

"Judgments and decrees—Default—Confession. (1) The Court shall determine the rights of the parties and grant to any party any affirmative relief to which he may be entitled on the pleadings and proofs. Judgments and decrees shall be in the form required by the nature of the case and by the recovery or relief awarded. More than one judgment or decree may be rendered in the same cause ＊ ＊ ＊."

Once a judgment by confession has been opened the Circuit Court is empowered to hear the entire dispute and to enter appropriate relief.

For the foregoing reasons the judgment of the Circuit Court is affirmed.

Judgment affirmed.

MURPHY and ADESKO, JJ., concur.