[No. 2600-1. Division One. May 5, 1975.]

WILLIAM C. THOMAS, *Respondent,* v. JAMES H. OSBORN *et al,* *Appellants.*

*Malcolm S. McLeod,* for appellants.

*Black, Christensen & Nielsen, Inc., P.S.,* and *Andrew T. Nielsen,* for respondent.

CALLOW, J.—The plaintiff William C. Thomas filed suit alleging that (1) the defendants James H. Osborn and Bernice Osborn, his wife, refused to return a redwood table that belonged to the plaintiff, and (2) the defendants, as makers of a note payable to plaintiff, refused to pay the note when due. The defendants denied the plaintiff's claims, asserted that the table was delivered as a gift, and that the note was not supported by consideration and was

obtained by misrepresentation. The defendants also counterclaimed for damages claimed to have resulted when the plaintiff added an acknowledgment to the note and recorded it.

The court entered judgment for the plaintiff after making the following findings of fact:

I

That defendants are in possession of a . . . table belonging to plaintiff, which . . . is of the value of $2,000.00, and wrongfully refused to return the same . . .

II

That the defendants . . . did for valuable consideration make, execute and deliver to plaintiff, their . . . note a copy of which was submitted in evidence as Exhibit No. 1.

III

That the defendants . . . have failed . . . to pay the promissory note, . . . and that the same, in the amount of $2,178.00 together with interest . . . is presently due and payable . . .

IV

That the defendants have failed to prove their affirmative defense, counterclaim and cross-complaint herein, and that the same should be dismissed with prejudice.

The promissory note is set forth on the opposite page.

The defendants challenge on appeal certain findings of fact, the dismissal of the affirmative defenses and counterclaims, and the award of judgment on the promissory note.

■ The defendants initially contend that there is insufficient evidence to support the finding that the redwood table had a value of $2,000. The record supports this finding, however, and also supports the trial court's holding that the plaintiff never intended to make a gift of the table to the defendants. *See Buckerfield's Ltd. v. B.C. Goose & Duck Farm Ltd.*, 9 Wn. App. 220, 511 P.2d 1360 (1973). The other findings entered are also supported by the record and we will not disturb them on appeal.

The defendants next contend that the note is subject to the defense of failure of consideration. The trial court's

Form 359 Transamerica Title Insurance Company

$ 2178.00          INSTALLMENT NOTE          NO. ...........................

................October 30........ ...................1969

FOR VALUE RECEIVED, I promise to pay

to .......WILLIAM C. THOMAS..................................................................................................., or order,

the sum of..Two..thousand..one..hundred..seventy..eight..&..no/100...................... DOLLARS

with interest thereon at the rate of. .......7...... per cent. per annum from date hereof; payable as follows:
On or before October 30th, 1970, EXCEPT that if the following described
propert is sold before that date, the total amount, together with interest
becomes due and payable in full.

PARCEL 1:
That portion of Southeast quarter of Northwest quarter of
Section 23, Township 28 North, Range 7 East, W.M., in Sno-
homish County, Washington, lying Westerly of the thread of
Woods Creek and Southerly of the following described line:
Beginning at the Northwest corner of said Section 23;
thence South 2° East along West line said Section 23 for
177½.9 feet to true point of beginning of said line; thence
South 89°06' East to intersect the East line of said South-
east quarter of Northwest quarter, EXCEPT the West 556 feet
thereof.

If any of said installments are not so paid, the whole sum of both principal and interest shall become due and payable at once without
further notice, at the option of the holder hereof.

This note shall bear interest at the rate of twelve per cent. per annum after maturity or after failure to pay any installment as above
specified, and if this note shall be placed in the hands of an attorney for collection, or if suit shall be brought to collect any of the principal
or interest of this note I promise to pay a reasonable attorney's fee.

Each maker of this note executes the same as a principal and not as a surety.

Signed by James H. Osborn, before;
me, the 30th day of October 1969, with
legal disc. attached.     Lawrence Whitford
notary public in and
for the State of Washington Residing at Monroe,

James H. Osborn
Bernice H. Osborn

OFFICIAL RECORDS    VOL 389 PAGE 256    OFFICIAL RECORDS

finding that consideration was given for the execution of
the note is supported by the record which shows that the
note was bargained for in settlement of the differences of
the parties over certain property and over claims for work
performed. *See Huberdeau v. Desmarais*, 79 Wn.2d 432,
486 P.2d 1074 (1971); *Snyder v. Roberts*, 45 Wn.2d 865, 278
P.2d 348, 52 A.L.R.2d 631 (1955). *See also* RCW 62A.3-408.

We turn to the primary issue raised: whether affixing
the acknowledgment of a signature of James H. Osborn and
the notarization of that signature so the note could be re-
corded constituted a material and fraudulent alteration dis-
charging the maker.

When the promissory note was signed, it had affixed to it
the legal property description following the words "Parcel 1."
After the note was signed, the plaintiff had a notary public
who had seen James H. Osborn sign the note, but had not
seen Mrs. Osborn sign, add an acknowledgment and notar-
ize the signature of James Osborn. The note was subse-
quently recorded in the Snohomish County auditor's office.

The defendants claim the acknowledgment, notarization and recording violated RCW 62A.3-407, which provides in part:

(1) Any alteration of an instrument is material which changes the contract of any party thereto in any respect, including any such change in

(a) the number or relations of the parties; or

(b) an incomplete instrument, by completing it otherwise than as authorized; or

(c) the writing as signed, by adding to it or by removing any part of it.

(2) As against any person other than a subsequent holder in due course

(a) alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense;

(b) no other alteration discharges any party and the instrument may be enforced according to its original tenor, or as to incomplete instruments according to the authority given.

■■ The first contention of the defendant-makers is that the recording of the note added the relationship of mortgagor-mortgagee to that of makers and payee, and therefore constituted a material alteration of the note. An examination of the recorded note reveals that it cannot be construed to be a mortgage. Ostensibly, the terms of the note include the legal description of the real property for the purpose of inserting an acceleration provision into the note. This is the apparent reason for the presence of the property description since the terms provide for payment in full on sale of the property rather than granting a security interest which might be looked to for recourse in the event of a default in payment. We cannot read into the instrument an unmanifested intent of the parties. The note was not ambiguous when it was signed by the makers, and it does not purport either a purpose to convey or to encumber the property. RCW 65.08.030, relating to notice to third persons from recorded instruments which purport to convey or encumber real estate (discussed at length during the

trial) is inapplicable. The note does not contain the expression of an intent to impose a lien upon the property.

A legal or equitable mortgage arises at the time of the transaction when money is loaned or credit given and the parties intend to create a lien upon property of the debtor as security for payment of the debt. *John Davis & Co. v. Cedar Glen # Four, Inc*, 75 Wn.2d 214, 450 P.2d 166 (1969); *Redemptorist Fathers v. Purdy*, 174 Wash. 358, 24 P.2d 1089 (1933); *Speirs v. Jahnsen*, 143 Wash. 297, 255 P. 117 (1927); *Gerber v. Heath*, 92 Wash. 519, 159 P. 691 (1916); *Mittlesteadt v. Johnson*, 75 Wash. 550, 135 P. 214 (1913); *Pacific Nat'l Bank v. Richmond*, 12 Wn. App. 592, 530 P.2d 718 (1975). It was not established that the defendant-debtors intended the creation of a lien against the described property. The instrument could not be construed as a mortgage or impart notice that it constituted an encumbrance on the property. It could not and did not change the relations of the parties or their contract. *See* RCW 62A.3-407(1) (a).

The second contention of the defendant-makers is that the addition to the note was a fraudulent and material alteration under the statute. In order for an alteration to discharge a party from liability on a note, it must have been (1) a material alteration, and (2) fraudulent. *Katski v. Boehm*, 249 Md. 568, 241 A.2d 129 (1968); *Bank of New Mexico v. Rice*, 78 N.M. 170, 429 P.2d 368 (1967); *New Britain Nat'l Bank v. Baugh*, 31 App. Div. 2d 898, 297 N.Y.S.2d 872 (1969). *See* Cosway, *Negotiable Instruments —A Comparison of Washington Law and the Uniform Commercial Code*, 43 Wash. L. Rev. 499 (1968); 2 R. Anderson, *Uniform Commercial Code* § 3-407 (2d ed. 1971, Supp. 1973-74); U.L.A., *Uniform Commercial Code* § 3-407 (1968). The comment to RCW 62A.3-407 says on the subject of materiality:

> Any alteration is material only as it may change the contract of a party to the instrument; and the addition or deletion of words which do not in any way affect the contract of any previous signer is not material. But any

change in the contract of a party, however slight, is a material alteration; and the addition of one cent to the amount payable, or an advance of one day in the date of payment, will operate as a discharge if it is fraudulent.

Official Comment 1, RCWA 62A.3-407. It has been said that whether a material alteration has occurred is basically a question of fact. *Lembo v. Federici,* 62 Wn.2d 972, 385 P.2d 312 (1963); Cosway, *Negotiable Instruments—A Comparison of Washington Law and the Uniform Commercial Code,* 43 Wash. L. Rev. 499, 516 (1968). When it is known or conceded that an alteration has taken place and the issue is whether the change is material or immaterial, the guideline of *Pitt v. Little,* 58 Wash. 355, 359, 108 P. 941 (1910), is of assistance. It was therein stated:

> The alleged alterations are immaterial memoranda or notations. They made no change in the date, the sum payable either principal or interest, the time of payment, the number or relation of the parties, or the medium or currency in which payment was to be made. Nor does any other alteration appear which added a place of payment where none was specified, or which altered the effect of the note in any respect.

*See also* W. Britton, *Bills and Notes* §§ 276-79 (2d ed. 1961); 4 Am. Jur. 2d *Alteration of Instruments* §§ 5, 6 (1962). We conclude that neither the recording of the instrument nor the addition of the addendum to the instrument changed the relationship of the parties, materially affected the form of the document, the time of payment, or the sum payable. The alteration did not attempt to acquire for the payee any funds to which he was not entitled.[1]

---

[1] *Cook v. Parks,* 46 Ga. App. 749, 169 S.E. 208 (1933); and *Williams v. F.S. Royster Guano Co.,* 67 Ga. App. 711, 21 S.E.2d 349 (1942), held that procuring a witness to sign a negotiable instrument was a material alteration. *See also Arnold v. Bostwick Banking Co.,* 121 Ga. App. 131, 173 S.E.2d 236 (1970). While the addition of an acknowledgment and notarization may facilitate proof of execution, it is not a reflection of a dishonest purpose or intent to alter the maker's liability on the instrument. *See Morton v. Mercantile Nat'l Bank,* 185 So.2d 172 (Fla. Ct. App. 1966); 4 Am. Jur. 2d *Alteration of Instruments* § 43 (1962).

We also find that the evidence does not indicate that the plaintiff acted fraudulently.[2] In Cosway, *Negotiable Instruments—A Comparison of Washington Law and the Uniform Commercial Code,* 43 Wash. L. Rev. 499, 515 (1968), it is said:

> The conceptual distinction between honest and fraudulent alteration is also a Code addition to previous statutory law. Some early Washington decisions can be identified as drawing the identical distinctions utilized by the Code, namely: honest, but misguided, alterations by a holder do not terminate liability on the instrument according to its original tenor; . . .

In *Hutcheson v. Herron,* 131 Ill. App. 2d 409, 266 N.E.2d 449 (1970), the meaning of fraud, as considered in connection with Uniform Commercial Code § 3-407, is discussed as follows:

> The Illinois Committee comments to § 3-407 states, "The term 'fraudulent' probably requires a finding that the alteration has attempted to impose an obligation or obligations upon the maker or other party against whom enforcement is sought additional to his obligation on the instrument at the time he signed it."

Thus, for the purposes of RCW 62A.3-407, fraud requires a dishonest and deceitful purpose to acquire more than one was entitled to under the note as signed by the makers rather than only a misguided purpose. When the plaintiff was asked on cross-examination what his purpose was in recording the note, he answered:

> So it would be public record that I had a lien against the parcel of ground with the legal description attached to the note.

---

[2] In the official comments to Uniform Commercial Code § 3-407, it is stated:

"b. A material alteration does not discharge any party unless it is made for a fraudulent purpose. There is no discharge where a blank is filled in the honest belief that it is as authorized; or where a change is made with a benevolent motive such as a desire to give the obligor the benefit of a lower interest rate. Changes favorable to the obligor are unlikely to be made with any fraudulent intent; but if such an intent is found the alteration may operate as a discharge." Official Comment 3(b), RCWA 62A.3-407.

The actions of the parties here are best characterized by the term "misguided." The trial court did not find a dishonest, fraudulent intent in the payee, and the chaotic dealings of the parties reveals that their understanding of the legal ramifications of their actions was limited. While the plaintiff attempted to overreach his position as payee by his effort to achieve security for payment of the debt, his ineffective attempt was not such a fraudulent intent to achieve something to which he was not entitled as would justify excusing the liability of the makers and granting them a windfall.

The judgment of the trial court is affirmed.

JAMES and SWANSON, JJ., concur.