**The BUSINESS BANK, Plaintiff,**

v.

**William H. PLANK and William P. Nottingham, Defendants and Third–Party Plaintiffs,**

v.

**UNITED FINANCIAL BANKING COMPANIES, INC., Third–Party Defendant.**

**Civ. A. No. 88–1303–A.**

United States District Court, E.D. Virginia, Alexandria Division.

April 20, 1989.

**620**

John S. Stump, Sean F. Murphy, Richard C. Baker, McGuire, Woods, Battle & Boothe, McLean, Va., for plaintiff The Bus. Bank and third party defendant United Financial Banking Co., Inc.

John E. Harrison, Light & Harrison, McLean, Va., for defendants and third party plaintiffs.

## MEMORANDUM OPINION

ELLIS, District Judge.

Among the host of issues raised in this diversity land development dispute is a uniform commercial code question addressed, but not explained, in Virginia. The question involves the application of Virginia Code § 8.3–407(2)(a) (1964). That Section, *inter alia*, provides that a maker of a note is discharged from his obligation where there is an alteration of the note "by the holder which is both fraudulent and material...." *Id.* The question presented is whether the fraud required must be actual rather than merely constructive. This question arose in the context of a jury instruction offered by the defendants, the makers of the note, which would have permitted the jury to consider constructive as well as actual fraud. The Court rejected this proffered instruction and states here its reasons for concluding that only actual fraud will suffice to meet the requirements of § 8.3–407(2)(a).

### Background[1]

This case arises out of a failed venture to develop several hundred acres of land in Loudoun County. On January 28, 1988, plaintiff, the Business Bank ("the Bank"), issued a letter of credit in the amount of $200,000 in favor of Leesburg Estate II Associates, one of the participants in the land development venture. On that same day, as collateral for the issuance of the letter of credit, the defendants, William Plank and William Nottingham, executed a $200,000 commercial note in favor of the Bank. The note was to be payable on demand in the event the $200,000 was drawn down on the letter of credit. Also, the note was to bear interest from the time the money was drawn down on the letter of credit at the prime rate of the Chase Manhattan Bank in New York.

The note was prepared using the Bank's pre-printed form. Included on the form are numerous blanks to be filled in with the particulars of a transaction. At the time the defendants executed the note, many of the blanks on the form had not been completed. Among the uncompleted blanks was the portion of the pre-printed form that included a "cognovit," or confession of judgment, provision. Specifically, when the defendants executed the note, the spaces for identifying the attorneys in fact and the name of the court had not been filled in. These and other blanks on the form were filled in by one of the Bank's employees on instruction of the Bank's president.[2] The Bank's president testified that she assumed she had authority from the defendants for completing the form and filling in these blanks. Defendants hotly contest this, claiming instead that the alterations were unconsented to, material and fraudulent. On the issue of fraud, the

---

1. The case's extensive and complex factual background need not be fully recounted here because the facts pertinent to the specific question presented are brief and may be simply stated.

2. Although defendants contend that several of the filled-in blanks constitute material and fraudulent alterations, chief attention at trial focused on the confession of judgment provision.

defendants argue that constructive fraud is adequate to satisfy the fraud requirement of § 3–407(2)(a) because Virginia recognizes constructive fraud as a species of actionable fraud. *See e.g. Nationwide Ins. Co. v. Patterson,* 331 S.E.2d 490 (Va.1985); *see also* 8B Michie's Jurisprudence, Fraud and Deceit § 3 (1977).

### Analysis

▮ Virginia Code § 8.3–407(2)(a) is derived from various sections of the Uniform Commercial Code and is essentially identical to provisions in force in virtually every state.[3] It provides for discharging the maker's obligation on a note where there has been an "alteration by the holder which is fraudulent and material." No specific definition of "fraudulent" is provided in the statute. The only Virginia decision on point, *Avocet Development Corp. v. McLean Bank,* 364 S.E.2d 757 (Va.1988), indicates, but does not explain, that constructive fraud will not suffice under Section 8.3–407.[4] While some authority from other jurisdictions reaches the opposite conclusion, the majority does not. Moreover, the structure and purpose of this provision make clear that only actual fraud will suffice to discharge the obligation on a note that has been materially altered without the consent of the obligor.

Compelling support for requiring actual fraud in connection with Section 8.3–407(2)(a) is furnished by (2)(b). That subsection provides that alterations that are not material or fraudulent do not warrant discharging the maker; rather, in those circumstances, the altered note "may be enforced according to its original tenor, or as to incomplete instruments according to the authority given." In other words, subsection 2(b) establishes that an obligor on a note is not discharged where the alteration, whether or not material, results from careless or innocent misrepresentation, *i.e.,* constructive fraud. Thus, construing subsection (2)(a) to include constructive fraud is wholly inconsistent with the existence and effect of (2)(b). Put another way, the drafters' purpose in enacting (2)(b) would be frustrated by construing (2)(a) to include constructive fraud. Material alterations resulting from less than actual fraud would then, contrary to (2)(b), result in discharges rather than enforcement in accordance with the note's original tenor. Only an actual fraud requirement accords with the overall purpose of the entire alteration provision in Section 8.3–407. The Virginia Code's Official Comment implicitly recognizes this by referring to "fraudulent purpose." [5]

Representative of the majority of decisions on this point is *Bank of Ripley v. Sadler,* 671 S.W.2d 454 (Tenn.1984). There a bank was awarded judgment for the balance due on a note in part because no actual fraud was found in the bank's action in extending the note and raising the interest rate. In the words of that court, "the majority rule requires actual fraud or dishonesty before there will be a discharge." *Id.* at 459. Another court put the point as follows:

*Avocet Development Corp.,* 364 S.E.2d at 764.

---

**3.** *See* Annot., *What Constitutes "Fraudulent & Material" Alteration of Negotiable Instruments Under UCC § 3–407(2)(a),* 88 ALR3d 905 (1978).

**4.** The only reference to this issue in the *Avocet Development Corp.* decision appears in the following single paragraph under the general heading of "Subordinate Issues."

> Refused Instruction N misstated the law. It told the jury that if the alteration of the note was unauthorized it was fraudulent and discharged the makers of the note from further liability. The Official Comment to Code § 8.3–407, which Avocet and Serafin cite as authority for this instruction, points out: "A material alteration does not discharge any party unless it is made for a fraudulent purpose. There is no discharge where a blank is filled in the honest belief that it is as authorized."

**5.** Paragraphs 3(b) and (d) of the Official Comment state, in pertinent part, as follows:

> b. A material alteration does not discharge any party unless it is made for a fraudulent purpose. There is no discharge where a blank is filled in the honest belief that it is authorized; or where a change is made with a benevolent motive such as a desire to give the obligor the benefit of a lower interest rate. Changes favorable to the obligor are unlikely to be make with any fraudulent intention; but if such an intent is found the alteration may operate as a discharge.
>
> ....
>
> d. If the alteration is not material or if it is not made for a fraudulent purpose there is no discharge, and the instrument may be enforced according to its original tenor....

"fraudulent" requires a dishonest and deceitful purpose to acquire more than one was entitled to under the note assigned by the maker rather than a misguided purpose.

*Thomas v. Osborne,* 13 Wash.App. 371, 536 P.2d 8 (1975).[6] *Hutcheson v. Herron,* 131 Ill.App.2d 409, 266 N.E.2d 449 (1970) is apparently to the contrary. There, the court found that fraud requires only that the alteration attempted to impose an obligation on the maker additional to the obligation assumed when the instrument was signed. Apparently, no deceitful intent was required. This minority decision is unpersuasive; it does not come squarely to grips with the issue.

For the reasons stated above, this Court concludes, with *Bank of Ripley,* that "the alteration by the holder must involve some type of actual fraud, dishonesty or deceit to support a finding of 'fraudulent.'" *Bank of Ripley,* 671 S.W.2d at 459. And, in Virginia, of course, the fraud must be proved by clear and convincing evidence. The instructions will so provide.

It is so ORDERED.

**6.** *See also Citizens Nat. Bank of Willmar v. Taylor,* 368 N.W.2d 913 (Minn.1985); *Peacock v. Farmers & Merchants Bank,* 454 So.2d 730 (Fla. App.Div.1984); *Logan v. Central Bank of Alabama, N.A.,* 397 So.2d 151 (Ala.Civ.App.1981); *Bluffestone v. Abrahams,* 607 P.2d 25 (Ariz.Ct. App.1980); *Willis v. Willis,* 30 U.C.C.Rep.Serv. (Callaghan) 1332 (D.D.C.1980), *aff'd in part and rev'd in part,* 655 F.2d 1333 (D.C.Cir.1970); *New Britain Nat. Bank v. Baugh,* 31 A.D.2d 898, 297 N.Y.S.2d 872 (1969).