FIRST NATIONAL BANK, HETTINGER, North Dakota, a banking corporation, Plaintiff and Appellant,

v.

Reginald ROBERTSON, Nancy Robertson, and James Nelson, d/b/a R & N Hide and Fur Co., Defendants and Appellees.

Civ. No. 880349.

Supreme Court of North Dakota.

June 27, 1989.

T.L. Secrest (argued), Hettinger, for plaintiff and appellant.

Greenwood, Greenwood & Greenwood, P.C., for defendants and appellees; argued by Gary D. Ramsey, Dickinson.

LEVINE, Justice.

First National Bank, Hettinger (Bank) appeals from a district court judgment discharging Reginald Robertson, Nancy Robertson and James Nelson from their obligation on a promissory note because of the Bank's material and fraudulent alteration of the note. We affirm.

Reginald, Nancy and James executed a promissory note secured by a real estate mortgage. The note was renewed by a promissory note secured by a real estate mortgage and was signed by Reginald and Nancy. After the renewal note was delinquent, the Bank discovered that James had not executed the note and requested James to sign it. However, before James signed, the Bank, as further security for the note, inserted on the face of the note the dates of three security agreements. The dates, March 29, 1982, November 5, 1982, and June 18, 1984, were inserted in the provision of the note designated for security agreements which secure the note. The three security agreements, which were in the Bank's possession, were originally executed to secure various promissory notes, all of which were paid in full.[1] James signed the note upon the Bank's misrepresentation that the note was the same note previously signed by Reginald and Nancy.

---

1. Collateral under the security agreements included a loader, a pickup, inventory, accounts and contract rights.

The Bank later commenced suit against the obligors seeking to foreclose upon the real estate mortgage. One of the defenses to the Bank's foreclosure action was the claim of material and fraudulent alteration of the renewal note.

Following a bench trial, the trial court found that the Bank had materially and fraudulently altered the promissory note. Pursuant to NDCC § 41–03–44, the court discharged Reginald, Nancy and James from their obligation on the note. The Bank appealed.

The Bank first argues that the alteration was not material because the addition of the three security agreements to the face of the note did not change the parties' contract. The Bank contends that the language of the promissory note and security agreements indicates that the collateral listed on the security agreements could be used as security for the note even though neither the security agreements nor the collateral were referred to in the note. Consequently, the alteration was merely a "ministerial" act intended to give Reginald, Nancy and James notice of the Bank's reliance on the security agreements.

Reginald, Nancy and James respond that the contract between the parties, as explained by their course of dealing, reveals that the note was intended to be secured solely by the mortgage. They assert that the trial court's findings that the promissory note was materially and fraudulently altered are not clearly erroneous. We agree.

The question of whether a note has been materially and fraudulently altered is one of fact, governed by Rule 52(a), NDRCivP. *See Thomas v. Osborn*, 13 Wash.App. 371, 536 P.2d 8, 12 (1975). A finding of fact is clearly erroneous when there is no evidence to support it, or when, although there is some evidence to support it, the reviewing court on the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Wright v. Wright*, 431 N.W.2d 301, 303 (N.D.1988).

NDCC § 41–03–44(2)(a) [UCC 3–407] provides for discharge if an alteration is both material and fraudulent:

"2. As against any person other than a subsequent holder in due course:

a. Alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense."

To discharge a party from liability on a note, the alteration must have been (1) made by the holder of the note, (2) a material alteration, and (3) made for a fraudulent purpose. *See* NDCC § 41–03–44 [UCC 3–407]; *Citizen's Nat. Bank of Willmar v. Taylor*, 368 N.W.2d 913, 917 (Minn.1985). The Bank was clearly the holder of the note. *See* NDCC § 41–01–11(20) [UCC 1–201]. The issue is whether the trial court clearly erred in finding a material and fraudulent alteration.

### 1. Material Alteration

An alteration is material when it changes the contract of any party to the instrument, in any respect, including changes in:

"a. The number or relations of the parties;

"b. An incomplete instrument, by completing it otherwise than as authorized; or

"c. The writing as signed, by adding to it or by removing any part of it." NDCC § 41–03–44(1) [UCC 3–407].

*See also Midway Nat. Bank of St. Paul v. Ray*, 359 N.W.2d 644, 646 (Minn.Ct.App. 1984); *Peppers v. Citizens & Southern Nat. Bank*, 127 Ga.App. 16, 192 S.E.2d 409, 410–11 (1972). In this case, whether there was a material alteration depends upon whether the addition of the security agreements to the face of the note, after it had been signed by Reginald and Nancy, changed the contract. If, as the Bank asserts, the language of the promissory note and security agreements indicates the parties' intent that the note be further secured by the prior security agreements, the addition of those security agreements to the face of the note did not change the contract, and therefore, did not constitute a material alteration.

The unaltered promissory note provided:

"SECURITY: Without notice Lender may (when and where legally permissible) charge this Note against Borrower's deposits and personal property maintained with Lender. When applicable, this Note is also secured by the unearned premiums and proceeds of any insurance policy required or purchased hereunder. This Note may be secured by prior or subsequent security instruments notwithstanding that such security is not indicated hereon. (Emphasis added.)

"__ This Note is not further secured.

"__ This Note is secured by a Security Agreement dated _____ 19__.

"X This Note is secured by a R.E. Mtg dated 1–10 1985 "

The language that we have emphasized by underscoring is permissive. It merely provides that the note may be secured by security not listed on the note. It does not reveal, however, by its terms whether the note is in fact secured by the prior security agreements.

Two of the prior security agreements added to the promissory note provide that:

"All Proceeds of all the foregoing, to secure payment to the Secured Party at the address stated above of all notes of Debtor concurrently herewith, heretofore or hereafter delivered to or purchased or otherwise acquired by the Secured Party, and all other liabilities and indebtedness of Debtor to the Secured Party, due or to become due, direct or indirect, absolute or contingent, joint or several, howsoever created, arising or evidenced, now existing or hereafter at any time created, arising or incurred (hereinafter called 'Secured Obligations')."

The other security agreement added to the note contains similar language. Under the security agreements, the secured property is security for existing, prior, and future notes and all other present, past, and future indebtedness. The security agreements expressly provide that they secure all future indebtedness.

2. Because the parties dispute only the interpretation of course of dealing under the facts, and do not question whether course of dealing applies to UCC Article 3 transactions, we do not decide the latter. *Cf.* White and Summers, Uni-

The trial court resorted to the parties' course of dealing to determine what they intended as security for the note.[2] A course of dealing is "a sequence of previous conduct between the parties to a particular transaction which is fairly to be regarded as establishing a common basis of understanding for interpreting their expressions and other conduct." NDCC § 41–01–15(1) [UCC 1–205]. A course of dealing between parties may give particular meaning to and supplement or qualify the terms of an agreement. NDCC § 41–01–15(3) [UCC 1–205].

Reginald, Nancy and James presented evidence of a course of dealing over several years during which they received loans from the Bank and provided specific security for each loan. They presented evidence that in this instance, the parties intended the real estate mortgage to be the sole security for the note. The trial court determined from the evidence that the parties established a course of dealing in which they expressly agreed upon specific security to secure individual promissory notes.

The evidence supports the finding that the addition of the security agreements changed the contract, and constitutes a material alteration under NDCC § 41–03–44 [UCC 3–407]. We conclude that the trial court's finding that the alteration was material is not clearly erroneous.

### 2. Fraud

■ There can be no discharge unless the alteration was both material and fraudulent. NDCC § 41–03–44 [UCC 3–407]. Neither Title 41 of the North Dakota Century Code, nor the UCC defines "fraudulent." However, fraud, under the UCC § 3–407, has been defined as "requir[ing] a dishonest and deceitful purpose to acquire more than one was entitled to under the note as signed by the makers rather than only a misguided purpose." *Thomas v. Osborn*, 13 Wash.App. 371, 536 P.2d 8, 13 (1975). *Accord Citizen's Nat. Bank of*

form Commercial Code, § 13–5, 19–3 (3rd Ed. 1988) (UCC 1–205 course of dealing may be applied to Article 5 letters of credit and to show the signer's representative capacity under Article 3).

*Willmar v. Taylor*, 368 N.W.2d 913 (Minn. 1985); *Bluffestone v. Abrahams*, 125 Ariz. 42, 607 P.2d 25 (Ct.App.1979). The general rule requires a party seeking discharge to show that the holder altered the instrument with a deceitful purpose. *Citizen's Nat. Bank of Willmar, supra* at 917.

There was evidence that when the promissory note was executed by Reginald and Nancy, no additional security was sought, other than the real estate mortgage listed on the promissory note. There was evidence that when the Bank requested James to sign the renewal note, the Bank misrepresented to James that it was the same note previously signed by Reginald and Nancy, when in fact, the note had been altered. In addition, after the note was delinquent, Reginald offered to convey title to the mortgaged property to the Bank, but the Bank refused, insisting that it receive payment for the difference between the sale price of the property and the debt. There were no discussions of any security agreements or reliance on any other collateral during these negotiations. Reginald testified that the security agreements were in the Bank's possession to be used only in the event the Bank granted him a working capital loan, but the loan was never granted. The evidence supports the trial court's finding that, by the alteration, the Bank fraudulently attempted to increase its security in order to increase its potential recovery on the delinquent note.

Relying on *Citizen's Nat. Bank of Willmar, supra*, the Bank argues that its alteration of the promissory note was not fraudulent, but merely "misguided" and therefore the alteration does not justify a discharge. In *Citizen's Nat. Bank of Willmar*, the Minnesota Supreme Court affirmed the trial court's finding of "misguided," rather than deceitful, conduct on the part of a Bank that increased the rate of interest on a defaulted note. 368 N.W.2d at 918. "Misguided" behavior is conduct that manifests no dishonest, fraudulent intent. *Id.*

In *Citizen's Nat. Bank, supra*, the fact finder found no evidence of fraudulent purpose, and the Minnesota Supreme Court affirmed. Here, there is evidence to support the fact finder's determination that the Bank altered the note with a fraudulent purpose, not a "misguided" purpose. A trial court's choice between two permissible views of the weight of evidence is not clearly erroneous. *Owan v. Kindel*, 347 N.W.2d 577, 579 (N.D.1984).

We conclude that the trial court did not clearly err in finding that the Bank materially and fraudulently altered the promissory note. We have considered the Bank's other arguments and are neither definitely nor firmly convinced that a mistake has been made.

Accordingly, we affirm.

ERICKSTAD, C.J., and VANDE WALLE, GIERKE and MESCHKE, JJ., concur.