[No. 39067-1-II.   Division Two.   August 17, 2010.]

THE ESTATE OF CORRINE WEGNER ET AL., *Respondents*, v. MAXINE ELAINE TESCHE, *Appellant*.

---

[61] RCW 71.09.020(17).

[62] *See Martin*, 163 Wn.2d at 510.

*Barry C. Kombol* (of *Rainier Legal Center Inc.*), for appellant.

*Hollis H. Barnett* and *Shannon R. Jones* (of *Campbell Dille Barnett Smith & Wiley*), for respondent.

¶1 ARMSTRONG, J. — When Corrine D. Wegner died, her principal asset was real estate she owned with Maxine Tesche in joint tenancy. Her personal representative believed that Wegner and Tesche intended the joint tenancy title to be a financing device that gave Tesche an equitable mortgage, not survivorship rights, and he sued Tesche in an attempt to acquire title to the property. The personal representative incurred fees and expenses investigating the issue but, after concluding that the estate was unlikely to recover the property, dismissed the claims against Tesche. The personal representative then sought to recover the estate's fees and expenses from Tesche. Tesche appeals the superior court's award of attorney fees and other estate

expenses and its denial of her motions to remove the personal representative, for damages, and for CR 11 sanctions. The estate and the personal representative cross appeal the amount of expenses awarded and the denial of administrative fees to the personal representative. Finding no reversible error, we affirm.

## FACTS

¶2 Corrine Wegner died intestate on February 20, 2006. Her heirs were two sisters and Kenneth Wegner, her brother.

¶3 At the time of her death, Corrine's main asset was real property in Enumclaw that contained her residence and a rental home.[1] She bought the property in 1994 with Tesche, and the two took title as joint tenants with right of survivorship. Tesche lived in Nevada and played no role in managing the property.

¶4 Kenneth was appointed personal representative of Corrine's estate with nonintervention powers.[2] The value of Corrine's personal property was less than $10,000, and the real property was worth approximately $400,000, subject to a first and second deed of trust with a balance owing of $134,000.

¶5 Before her death, Corrine's family understood that she was the sole owner of the real property and that she had borrowed money from a friend for its purchase. Three months before her death, Corrine allegedly told her aunt that the person who lent her the money "had played a dirty trick on her" regarding her deed but that she hoped to pay off the loan from some anticipated real estate commissions. Clerk's Papers (CP) at 121, 326. After her death, the family discovered that the real property was in Corrine's and Tesche's names as joint tenants with right of survivorship.

---

[1] We refer to the Wegners by their first names for the sake of clarity. We intend no disrespect.

[2] When a court provides nonintervention authority, the personal representative receives the maximum statutory authority to manage the estate. 26B CHERYL C. MITCHELL & FERD H. MITCHELL, WASHINGTON PRACTICE: PROBATE LAW AND PRACTICE 62 (2006).

¶6 In April 2006, Kenneth sued Tesche under the Trust and Estate Dispute Resolution Act (TEDRA), chapter 11.96A RCW, alleging (1) that Corrine and Tesche had created an equitable mortgage, (2) that they held the real property as tenants in common, (3) that an accounting of the real property expenses paid solely by Corrine was required, and (4) that Corrine's nonprobate real property asset should bear the reasonable pro-rata costs of the probate administration. That action was consolidated with the probate proceeding in 2007.

¶7 After filing the TEDRA action, Kenneth went through several boxes of Corrine's real estate records looking for documentation of the alleged comments to her aunt and the "true" nature of title to the real property. CP at 302. Failing to uncover any supporting evidence, the estate moved in August 2008 to voluntarily dismiss the three claims involving equitable mortgage, tenancy in common, and an accounting. The estate did not dismiss its claim that Corrine's interest in the real property, a nonprobate asset under Washington law, should be assessed its fair share of administrative expenses and creditor claims under RCW 11.42.085.

¶8 Kenneth then filed his final report as the estate's personal representative. He requested that the estate be closed and that Corrine's interest in the real property be used to pay the remaining creditor claims, plus administrative fees and expenses. More specifically, Kenneth requested that Corrine's interest be responsible for $24,335.15 in legal fees to the estate's attorney and $7,500.00 in administrator fees to him as personal representative, as well as approximately $10,000.00 in other claims and costs. His final report cited RCW 11.18.200 as authority for that request. Tesche opposed the estate's request for administrative expenses and fees, arguing that the property was left in a "horrible state" when she finally received possession, that RCW 11.18.200 did not support the request, and that there was no accounting for the two fee requests. CP at 61. She also moved for a citation against Kenneth so that the court

could reassess his nonintervention authority, and for an award of damages based on her property damage and litigation costs. In a supporting memorandum, she stated that "this Court should inquire into C.R. 11 violations by P.R. [(personal representative)] Wegner and by his attorney." CP at 80. Tesche did not move separately for CR 11 sanctions, and she never noted any motion for hearing.

¶9 Following the hearing on the final report, a pro tempore commissioner entered findings of fact stating that Corrine's alleged comments to her aunt required the estate's investigation, that there were reasonable grounds for the estate to sue Tesche, that the associated legal actions were reasonably incurred expenses in the estate's administration, and that the decedent's net one-half interest in the real property after deducting the secured interest was valued at approximately $133,000.00. The unpaid estate expenses, including attorney fees of $24,335.15 and fees to Kenneth of $7,500.00, totaled $39,925.17. The commissioner struck Kenneth's fee request because no written documentation supported it, and he determined that Corrine's interest in the real property, a nonprobate asset, would be responsible for only $16,212.58. Because Tesche is the beneficiary of the nonprobate asset, the order provided that she was personally liable to the estate for that amount and that the estate was entitled to a judgment lien against the real property in that sum, with interest. The commissioner's order concluded:

> Kenneth Wegner's application for P.R. fees is denied; and that from the monies received on the judgement [sic] lien, the creditors will first be paid, and the attorney fees paid from the remaining funds. The court determines in equity that the non-probate property should be responsible for ½ of the expenses requested by petitioner, except as denied.

CP at 125-26.[3]

---

[3] There is no transcript of the hearing before the commissioner in the record, apparently because there was no court reporter and the parties did not transcribe the audio recording.

¶10 Tesche moved for revision without specifying which aspect of the commissioner's decision she was challenging, and the estate moved to revise that part of his decision denying Kenneth's fee request and reducing by half the amount of expenses awarded. The estate contemporaneously filed a declaration explaining Kenneth's request for $7,500 in fees. At the revision hearing, Tesche argued that her motions for damages and a citation were properly before the court, and she argued that her motion for CR 11 sanctions had not been heard and should be scheduled "unless the Court is prepared to enter a ruling today in respect to my motions . . . for removal and citation and . . . attorney's fees." Report of Proceedings at 36-37. The superior court denied both parties relief, ordering that "all motions for revision including oral motions are hereby denied, and the Commissioner's order remains in full force and effect." CP at 130.

¶11 Tesche appeals the trial court's award of attorney fees and its denial of her oral motions, and the estate and Kenneth cross appeal the court's decision to reduce the award of expenses and deny Kenneth fees.

## ANALYSIS

### LITIGATION EXPENSES UNDER RCW 11.18.200

¶12 On revision, the superior court reviews the commissioner's findings of fact and conclusions of law de novo. *In re Estate of Wright*, 147 Wn. App. 674, 680, 196 P.3d 1075 (2008), *review denied*, 166 Wn.2d 1005, 208 P.3d 1124 (2009). We review the superior court's decision, not the commissioner's decision. *Wright*, 147 Wn. App. at 680. Generally, we consider whether the superior court abused its discretion, which we will find only if the decision rests on unreasonable or untenable grounds. *In re Marriage of Booth*, 114 Wn.2d 772, 779, 791 P.2d 519 (1990). The first issue presented here, however, is one of statutory construction, which we review de novo. *Rettkowski v. Dep't of Ecology*, 128 Wn.2d 508, 515, 910 P.2d 462 (1996).

¶13  Both parties argued before the superior court that RCW 11.18.200 was the controlling statute;[4] it provides in part:

(1) Unless expressly exempted by statute, a beneficiary of a nonprobate asset that was subject to satisfaction of the decedent's general liabilities immediately before the decedent's death takes the asset subject to liabilities, claims, estate taxes, and the fair share of expenses of administration reasonably incurred by the personal representative in the transfer of or administration upon the asset. The beneficiary of such an asset is liable to account to the personal representative to the extent necessary to satisfy liabilities, claims, the asset's fair share of expenses of administration, and the asset's share of estate taxes . . . .

(2) The following rules govern in applying subsection (1) of this section:

. . . .

(b) A beneficiary of property held in joint tenancy form with right of survivorship . . . takes the property subject to the decedent's liabilities, claims, estate taxes, and administrative expenses as described in subsection (1) of this section to the extent of the decedent's beneficial ownership interest in the property immediately before death.

¶14  RCW 11.02.005(15) also defines "nonprobate assets" in part as

those rights and interests of a person having beneficial ownership of an asset that pass on the person's death under a written instrument or arrangement other than the person's will. "Nonprobate asset" includes, but is not limited to, a right or interest passing under a joint tenancy with right of survivorship.

---

[4] Despite this fact, Tesche opens her brief with the claim that the commissioner erred if he relied on RCW 11.42.085. This is the statute that the estate first cited in requesting an award of fees and expenses from the nonprobate asset. It applies only to the settlement of creditor claims for estates passing without probate, where a personal representative has not been appointed. RCW 11.42.085, .010(1). The commissioner did not cite legal authority in his decision, and both parties relied on RCW 11.18.200 in arguing to the superior court that his decision was erroneous. Tesche did not refer to RCW 11.42.085 below and has waived any claim of error concerning it. *Peoples Nat'l Bank of Wash. v. Peterson*, 82 Wn.2d 822, 829-30, 514 P.2d 159 (1973).

*See also* RCW 64.28.010 (joint tenancy with right of survivorship permits property to pass to survivor without cost or delay of probate proceedings, but "such transfer shall not derogate from the rights of creditors").

¶15 Tesche admits that Corrine's interest in the real property is a nonprobate asset that is responsible for creditor claims under RCW 11.18.200, but she contends that the attorney fees that arose out of the unsuccessful litigation against her do not qualify as authorized administrative expenses under RCW 11.18.200. More specifically, Tesche argues that the attorney fees related to the TEDRA action do not constitute expenses of administration reasonably incurred by the personal representative in the transfer or administration of the nonprobate asset.

¶16 But Tesche did not challenge the commissioner's findings of fact in her appeal to the superior court. *See* PCLR 7(g)(3) (motion for revision shall state with specificity the portion of the commissioner's order sought to be revised, and any portion not so specified shall be binding as if no revision motion had been made). The commissioner found that the litigation expenses incurred were reasonable because the allegations concerning Corrine's statements to her aunt needed investigation: "There were reasonable grounds for the estate to bring its initial lawsuit against Maxine Elaine Tesche, and the legal actions, including discovery, briefings, court appearances and orders entered, were all reasonable incurred expenses in the administration of the estate." CP at 121. In addition to the local rule cited above, Tesche is bound by the rule that unchallenged findings of fact are verities on appeal. *Robel v. Roundup Corp.*, 148 Wn.2d 35, 42, 59 P.3d 611 (2002). Thus, Tesche did not preserve the issue for review.

¶17 Moreover, even if we assume that Tesche did preserve the issue, the commissioner did not err in ruling that Kenneth reasonably incurred the litigation expenses in the transfer or administration of the nonprobate asset. The TEDRA action was not frivolous; its allegation that the deed created an equitable mortgage is not without legal

support. *See Gossett v. Farmers Ins. Co. of Wash.*, 133 Wn.2d 954, 966, 948 P.2d 1264 (1997) (if deed is conveyed with the intent to create a debtor-creditor relationship, it may create an equitable mortgage); *Thomas v. Osborn*, 13 Wn. App. 371, 375, 536 P.2d 8 (1975) (equitable mortgage arises when money is loaned and the parties intend to create a lien on the debtor's property as security for the debt's payment). Kenneth argued that the joint tenancy was created for security purposes only and that title in the entire property should be vested in the estate. He also contended that the court should find in equity that Tesche and Corrine took the property as tenants in common, thus extinguishing the right of survivorship. *Lyon v. Lyon*, 100 Wn.2d 409, 411, 670 P.2d 272 (1983). Joint tenancies are disfavored under the law, and the trial court denied Tesche's motions to dismiss the TEDRA action before consolidating it with the probate proceeding, thus supporting the conclusion that the litigation expenses were reasonably incurred. *See v. Henningar*, 151 Wn. App. 669, 674, 213 P.3d 941 (2009), *review denied*, 168 Wn.2d 1012, 227 P.3d 295 (2010).

¶18 In addition to being reasonable, RCW 11.18.200(1) specifies that the expenses must be incurred "in the transfer of or administration upon" the nonprobate asset. The statute does not define "transfer of" or "administration upon," so their ordinary meanings apply. *See Nationwide Ins. v. Williams*, 71 Wn. App. 336, 342, 858 P.2d 516 (1993) (undefined statutory terms must be given their usual meaning and courts may not read into a statute meanings that are not there). "Administration" is "[t]he management and settlement of the estate of an intestate decedent . . . by a person legally appointed and supervised by the court." BLACK'S LAW DICTIONARY 49 (9th ed. 2009). "Transfer" includes "every method . . . of disposing of or parting with property or with an interest in property." BLACK'S LAW DICTIONARY, *supra*, at 1636. Kenneth pursued the TEDRA action as part of his attempt to acquire title to Corrine's property and settle the estate. Until the issue of the true nature of the joint tenancy

was settled, it was not clear whether the asset belonged in the estate or was properly going to Tesche as a true surviving tenant. Thus, Kenneth reasonably incurred the litigation expenses in administering the nonprobate asset and the superior court did not err in awarding the estate attorney fees under RCW 11.18.200.

¶19 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.

PENOYAR, C.J., and WORSWICK, J., concur.